WILLIAM KASSEBAUM, APPELLANT, V. NEBRASKA STATE
RAILWAY COMMISSION, APPELLEE.
7 N. W. (2d) 464

FILED JANUARY 6, 1943. No. 31467.

*Harry F. Russell,* for appellant.

*Walter R. Johnson, Attorney General,* and *Edwin Vail,* contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

Appellant Kassebaum holds a certificate of convenience and necessity as a common carrier by motor vehicle. Upon citation to show cause it was held by the state railway commission that his operations were in violation of the law

and his certificate. Kassebaum appeals. The appeal presents the question of the proper construction to be given to the certificate. We reverse the order of the Commission in part.

As used herein the term Commission means the Nebraska state railway commission.

For several years prior to 1937 the appellant Kassebaum was operating a commercial trucking business in the state of Nebraska. In 1937 the legislature enacted chapter 142, Laws 1937, now sections 75-222 to 75-238, Comp. St. Supp. 1941. Section 75-228, *supra*, provides: "Ninety days after the effective date of this Act it shall be unlawful for any common carrier * * * subject to the provisions of this Act to engage in any intrastate operations * * * unless there is in force with respect to such carrier a certificate of public convenience and necessity * * * : Provided, * * * if any such carrier * * * was in actual *bona fide* operation as a common carrier by motor vehicle on April 1, 1936, over the route or routes or within the territory for which application is made, * * * the Commission shall issue such certificate without requiring further proof that public convenience and necessity will be served by such operation * * * ." Pursuant to this provision of the act, on December 21, 1937, a certificate was issued to Kassebaum authorizing him "to operate as a common carrier of property by motor vehicle upon the highways of Nebraska, and to render the service and over the route or routes or within the territory hereinafter authorized and to desist from any other operations * * * subject to the condition that applicant conforms to the provisions * * * (of the act) and the requirements, rules and regulations of the Commission."

The certificate specifically provided as follows: "Service Authorized: Commodities generally, including live stock, but except those requiring special equipment other than refrigeration. Route or Territory Authorized: Irregular routes from within a 25-mile radius of Hebron, to and from Omaha and vicinity and Lincoln and vicinity, occasionally to and from various points in the extreme western part of

the state, including Scottsbluff, also occasionally to and from various points in the state of Nebraska on a state-wide basis."

On June 4, 1941, the commission cited Kassebaum to appear and show cause, if any, why his certificate should not be revoked, canceled, annulled or suspended for wilful failure to comply with the provisions of the act and the rules and regulations of the commission, and why he should not be required to confine his operations as set forth in his certificate. The citation recited the issuance of the certificate; that it authorized "only operations as a common carrier over irregular routes," that it correctly described Kassebaum's actual operations as of April 1, 1936; it charged that Kassebaum was conducting operations not authorized by his certificate "in that he was operating as a common carrier by motor vehicle over a route between the fixed termini of Hebron and Lincoln, Nebraska, with a strong degree of regularity" from December 4, 1940, until May 17, 1941.

To this citation respondent answered to the effect that his operations were entirely within the law, and within the terms of his certificate.

On June 23, 1941, a hearing was had before an examiner of the Commission. The evidence in many respects is indefinite and inconclusive. The evidence discloses however that beginning in the fall of 1940 Kassebaum's business between Hebron and Lincoln increased and he operated a somewhat regular service between the above points on Mondays, Wednesdays and Fridays, and advertised such service. In November, 1940, a criminal complaint was filed in Thayer county, evidently charging a violation of the act, but the exact nature of the charge is not shown. Subsequent to that charge, Kassebaum discontinued his scheduled trips, but continued to make trips on call and to solicit business to complete a cargo. These trips continued to preponderate on Mondays, Wednesdays and Fridays, although he made a substantial number of trips on other days of each week. While not at all definite in the evi-

dence, the examiner found that he followed generally highways 81 and 6 from Hebron to Lincoln and return.

Based on the examiner's report, the Commission found that the essential elements of a regular route service are that (1) there must be fixed termini, (2) a fixity of highways traveled, (3) a regularity of service rendered, and (4) a predetermined plan of the carrier to conduct such operations; that each of the foregoing elements were found in the instant case; that the services being performed by Kassebaum were those of a regular route operator; and that such services were not authorized by his certificate. He was ordered to cease and desist from performing regular route service and to limit his operations to those authorized in his certificate. The Commission denied a rehearing. Kassebaum appeals.

The case requires a construction of the act, a construction of Kassebaum's certificate and a determination of whether or not his operations as detailed in the evidence and as found by the Commission are authorized by his certificate.

The act recites a policy "to regulate transportation by motor carriers * * * in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers in the public interest; promote adequate, economical and efficient service * * * develop and preserve a highway transportation system properly adapted to the needs of the commerce of Nebraska." Section 75-222, *supra*. It places upon the Commission the duty to regulate common carriers by motor vehicle "and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service." Section 75-225, *supra*. The Commission has authority to attach to the exercise of the privileges granted by the certificate "such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require." Section 75-228 (d), *supra*. The Commission may suspend, change or revoke a certificate in whole or in part "for wil-

ful failure to comply" with the act or "with any lawful order, rule or regulation" of the Commission or "with any term, condition or limitation" of the certificate. Section 75-231, *supra*. Wilful violation of any terms of the act is made a misdemeanor punishable by fine. Section 75-237, *supra*.

Kassebaum's certificate was issued under the so-called "grandfather" clause of section 75-228 (a), *supra*. To secure it he was required to show the operations that he was conducting on April 1, 1936, and subsequent thereto, and was not required to furnish further proof of public convenience and necessity. That is the only distinction made in the act between those who hold a "grandfather" certificate and those who hold a certificate issued upon a showing of public convenience and necessity. The certificate determined his operations prior to the critical dates of the act. The Commission cannot, in this proceeding, go behind the certificate and show that Kassebaum's operations prior to that period were different than those set out in his certificate. It must start with that certificate as the basis of his rights, and the issue is whether or not his operations are within or without the authorizations of his certificate.

That Kassebaum should limit his operations "to those authorized in his certificate" is not questioned.

The Commission in their order first tested Kassebaum's operations by their formula and not by the language of his certificate or the act. Based on their formula they appear to hold that Kassebaum's certificate does not authorize him to haul from Hebron to Lincoln and Omaha over the same highway with any degree of regularity.

It is evident, from the Commission's order, that it considers it has the power to classify common carriers into two groups, *i. e.*, regular and irregular route carriers, to establish a formula of elements that determine to which classification a common carrier belongs, and to test the operations of a carrier according to such classifications instead of testing his operations by the terms of his certificate.

Does the Commission have that power?

Our act (section 75-222, *supra*), refers to, and appears to have been copied in part from, the Motor Carrier Act 1935, 49 U. S. St. at Large, Part 1, ch. 498, p. 543.

The Commission appear to have assumed they have the same authority as the Interstate Commerce Commission, and to have followed the classification made by it of regular and irregular route carriers. Our act classifies carriers into two groups, "common carrier" (section 75-228, *supra*), and "contract carrier" (section 75-229, *supra*). So does the federal act. 49 U. S. St. at Large, Part 1, ch. 498, secs. 206 (a), 209 (a). This classification of common and contract carriers is recognized in our act in section 75-225 (a) and (b), *supra,* and in the federal act in section 204 (a) (1) and (2), 49 U. S. St. at Large, Part 1, ch. 498, p. 546. The federal act further provides: "The Commission may from time to time establish such just and reasonable classifications of * * * groups of carriers included in the term 'common carrier by motor vehicle,' * * * as the special nature of the services performed by such carriers * * * shall require; and such just and reasonable rules, regulations, and requirements, * * * to be observed by the carriers * * * so classified or grouped, * * * ." 49 U. S. St. at Large, Part 1, ch. 498, sec. 204(c), p. 547. Our legislature did not enact that part of the federal act, and did not give to the Commission that power of classification of common carriers. Our act does give to the Commission power to classify motor carriers as to bonds, insurance, etc. Section 75-232, *supra.* This provision is not in the comparable section of the federal act, section 215, 49 U. S. St. at Large, Part 1, ch. 498, p. 557.

The authority to classify common carriers, as the Commission here seeks to do, is negatived by the omissions from our act of the grant of power contained in the federal act and by the specific authority to classify as to bonds and insurance. The definition of a "common carrier" contained in section 75-223 (i), *supra,* is not a grant of power authorizing such a classification.

Accordingly we hold that the legislature has not granted to the Commission the power to classify common carriers as regular or irregular route carriers, nor to establish a formula of "elements" that determine to which classification a common carrier belongs, nor to test the operations of a carrier according to such classification. His operations are to be tested by the terms of his certificate. The attempt of the Commission here to classify Kassebaum's operations as those of a "regular route operator" and to hold that he has violated his certificate because he does not hold a regular route operator's certificate is without the authority of the Commission.

However, the Commission is granted the power and directed, in issuing certificates, to "specify the service to be rendered" and either (1) "the routes over which (,) the fixed termini, if any, between which, and the intermediate and off-route points, if any, at which, * * * such carrier is authorized to operate;" or (2) "in case of operations not over specified routes or between fixed termini, the territory within which (,) such carrier is authorized to operate." Section 75-228 (d), *supra.* The commas inserted in the above quote and shown as (,) are not found in our act but are found in the comparable section of the federal act. 49 U. S. St. at Large, Part 1, ch. 498, sec. 208 (a), p. 552. This division of the authority to be specified in the certificate is supported by the provision that, if any carrier was "in actual *bona fide* operation as a common carrier by motor vehicle on April 1, 1936, over the route or routes *or* within the territory for which application is made * * * the Commission shall issue such certificate," etc. Section 75-228 (a), *supra,* and the federal act, section 206 (a), *supra.*

It is clear from the terms of Kassebaum's certificate that the Commission so construed the act when the certificate was issued, for Kassebaum's certificate specifies only "the territory within which (he) is authorized to operate." It is patent that the Commission in issuing Kassebaum's certificate recognized that he had been operating "within the

territory" for which his application was made and that he was authorized to continue to operate within that territory. A certificate defining only the territory within which a carrier is authorized to operate is one broader in scope than a certificate which restricts the carrier to specified routes over which, the fixed termini, between which and intermediate and off route points at which a carrier is authorized to operate. Kassebaum's certificate is broader in its authority than a certificate limited to named routes, fixed termini and intermediate and off route points.

What then are the outside limits of the authority granted by the certificate? So far as involved in the charges here, Kassebaum is authorized by his certificate to operate "Irregular routes from within a 25-mile radius of Hebron, to and from Omaha and vicinity and Lincoln and vicinity." The Commission does not contend that he was operating outside the territorial limits of his certificate. The position of the Commission appears to be that the use of the words "Irregular routes" in his certificate prevents Kassebaum from operating between Hebron and Lincoln upon a schedule regular as to road traveled and regular as to time of trips made; or, otherwise stated, the Commission appears to hold that Kassebaum's certificate does not authorize him to handle freight if all or the major part of it originates in Hebron or Lincoln and is destined to Lincoln or Hebron; that he is not permitted regularly to follow the paved highway between those points; and that he is not permitted to follow a schedule of trips that causes his movements to come largely on certain days of each week. The Commission does not take the position that he was doing too much hauling, but rather that he was doing too much hauling from and to Hebron.

Does Kassebaum's certificate so limit his operations? Kassebaum's certificate establishes that he was engaged in general hauling within the territory set out in his certificate prior to the passage of the act. The fact that his business has grown so as to require more frequent and somewhat regular trips cannot be the basis of construing

his certificate so as to deny him the right to carry within that territory all of the authorized commodities tendered him. His certificate makes no limitation as to volume of business. He has been authorized to render the service within territorial limitations without regard to volume of or increase of business.

The noun "route" is defined by Webster as the "course or way which is or is to be traveled or passed." It is defined in 54 C. J. 1106, as: "A way used for going from one place to another, in common acceptation excluding terminal points, and making it dependent on them. The term implies passage to and from." To what extent is the meaning of the word "route" changed when modified by the word "irregular"? The Commission appear to take the position that Kassebaum must follow different routes on trips from and to Hebron and Lincoln. If Kassebaum has shipments to move from Lincoln to Hebron on succeeding days, would it "promote adequate, economical and efficient service" to require him to use the paved road one day, a graveled road the next and perchance a dirt road on the third day? Would such a requirement tend to "develop and preserve" a transportation system "properly adapted to the needs of the commerce of Nebraska?" We think not. The provisions of section 75-228 (d), *supra*, that in case of operations authorized not over specified routes or between fixed termini (and that is Kassebaum's situation) the certificate shall specify "the territory within which such carrier is authorized to operate," clearly indicate a legislative intention to permit carriers such as Kassebaum, holding such a certificate, to have a freedom of choice of routes to meet the needs of the commerce which they serve that is far broader than that had by carriers who are by their certificates limited to following regular routes to and from fixed termini. The answer to what is the correct meaning of the words "irregular route" as used in his certificate may be determined from an analysis of the territory that Kassebaum is authorized to serve. He is not required to go from and to Lincoln and Hebron. His ship-

ments may originate at or be delivered to any point within a radius of 25 miles of Hebron and Lincoln or Omaha and vicinity. We are not here required to define the meaning of "vicinity." Obviously to render "adequate, economical and efficient service" requires that he be permitted to go from his point of origin to his point of delivery along that route that is best suitable to the trip that he is making. He may use different routes on different trips or he may use the same route repeatedly if economical, efficient operation requires. He is not restricted to specified routes. He may, but is not required to, use the same route for all of his trips.

Does Kassebaum's certificate require that he move shipments at irregular times and not on a fixed schedule? Certainly the term "irregular routes" cannot be construed to mean irregular times. The authority recited in the certificate to "occasionally" make trips to and from points in the western part of the state and "occasionally" to and from various points in the state on a state-wide basis indicates that the Commission, at the time the certificate was issued, contemplated that the service between "a 25-mile radius of Hebron, to and from Omaha and vicinity and Lincoln and vicinity," would be not occasional or irregular as to time. Regularity of time of trips is not denied by the certificate. We find no authority in the act giving the Commission specific authority to regulate or control the time of movements. His certificate cannot be so construed.

Is the requirement as to the time of trips a "reasonable" limitation which the Commission may attach "for the public convenience and necessity"? We think not. There is no contention here that Kassebaum's operations resulted in an improper use of the highways, caused congestion or otherwise inconvenienced or damaged the public. One of the declared policies of the act is to "recognize and preserve the inherent advantages of, * * * such transportation * * * in the public interest." Section 75-222, *supra.* One of the "inherent advantages" of motor transportation is that it is able to start at any time for any destination .

with a limited amount of shipment. If a truck load of freight is ready to move on a Monday, it does not preserve the inherent advantages of motor transportation nor promote adequate, economical or efficient service to require the carrier to wait and start on Tuesday. The "needs of commerce" require that shipments be moved when ready. If the needs of commerce require that freight be moved on certain days of each week, the regulations of the Commission should aid and not retard the movement. The Commission is authorized to "establish reasonable requirements with respect to continuous and adequate service." Section 75-225, *supra*. A requirement which prevents the rendering of continuous service by a carrier is not a reasonable one under the act.

We find therefore that Kassebaum's certificate does not limit him as do the certificates of carriers who are authorized to move to and from fixed termini over fixed routes; the routes which he may use are those which go from his point of origin of a shipment to his destination (within territorial limits), and which may be adequate, economical and efficient to the service which he renders in the movement of commerce; within those limits he may follow the routes of his choice, repeating trips over the same route if his shipments justify it; and his certificate does not limit him to the time when he may make his trips.

Kassebaum's operations as detailed in the evidence and as found by the Commission are within the authorization of his certificate and the provisions of the act. That part of the Commission's finding and order determining otherwise is reversed.

REVERSED.