Argued November 10; reversed December 30, 1948;
rehearing denied February 1, 1949

# HORGER *v.* FLAGG, Public Utilities Commissioner, et al.

201 P. (2d) 515
202 P. (2d) 526

111

*E. L. Graham,* Assistant Attorney General, of Salem, and *William B. Adams,* of Portland, argued the cause for appellants. With them on the brief were George Neuner, Attorney General, of Salem, and Frank C. McColloch, Alfred H. Corbett and F. Brock Miller, all of Portland.

*Thomas J. White* and *Irving Rand,* both of Portland, argued the cause for respondent. With them on the brief were Leedy & Keane, of Portland.

BRAND, J.

On 15 July 1942 the plaintiff Horger, doing business as the Oregon Freight Lines, by order of the Commissioner of Public Utilities of Oregon received the following permit:

"P. U. C. Ore. Permit No. 1625-1

"PERMIT FOR THE OPERATION OF
MOTOR VEHICLES

"C. C. HORGER, DBA OREGON FREIGHT LINES of 352 U. S. Bank Bldg., Portland, Ore-

gon having complied with the requirements of the Motor Transportation Act and amendments thereto is hereby authorized to furnish COMMON CARRIER: TRANSPORTATION OF PROPERTY, ANYWHERE FOR HIRE IN OREGON by means of motor propelled vehicles under the provisions of Chapter 429, Oregon Laws 1933, as amended, with the equipment as shown on Schedule "A" attached hereto and made a part hereof, and as may be amended; provided that this permit shall be subject to the following conditions and restrictions:

"WITHIN MULTNOMAH COUNTY, OREGON, AND FROM ANY POINT IN SAID COUNTY TO ANY POINT IN OREGON, AND FROM ANY POINT IN OREGON TO ANY POINT IN SAID COUNTY, EXCEPT NO RESTRICTIONS TO THE TRANSPORTATION OF LIVESTOCK, HOUSEHOLD GOODS, AND EMIGRANT MOVABLES.

"It is expressly understood that this permit hereby granted is subject to amendment and modification from time to time as conditions may require and that it is subject to revocation upon the failure of permittee herein to comply with all laws of the state of Oregon relating to the operation of motor vehicles, and the rules, regulations, orders and decisions that are now or may hereafter be promulgated, prescribed and adopted by the Public Utilities Commissioner of Oregon."

On 23 June 1947 the Consolidated Freightways, Inc.; J. E. Walstrom, doing business as Central Transfer Company, Oregon-Nevada California Fast Freight, Inc.; and Pacific Motor Trucking Company, filed a complaint before the Public Utilities Commissioner of Oregon, against C. C. Horger, in which the complainants alleged that they were common carriers engaged in the transportation of commodities by motor vehicle,

operating a regular scheduled fixed termini service. It is alleged that each of the corporate complainants operated such fixed termini service between: a. Portland, Oregon and North Bend, Oregon; b. Portland, Oregon and Coos Bay, Oregon; c. Portland, Oregon and Coquille, Oregon. It was alleged that J. E. Walstrom operates a regular fixed termini service between Coos Bay, Oregon and Brookings, Oregon, and that all of the complainants were operating pursuant to the authority of the Public Utilities Commissioner of Oregon. The complaint alleges the issuance of the above quoted permit to Horger and that Horger:

"for several months last past * * * has violated, and now is violating, the provisions of the Motor Transportation Act of the State of Oregon and the Rules and Regulations governing the Operation of Motor Carriers in the Transportation of Persons and Property Over the Public Highways of the State of Oregon as duly promulgated by the Public Utilities Commissioner of the State of Oregon, in the following respects, to-wit:

"A. By regularly transporting various commodities between fixed termini as follows:

"1. Portland, Oregon and North Bend, Oregon

"2. Portland, Oregon and Coos Bay, Oregon

"3. Portland, Oregon and Coquille, Oregon

"4. North Bend, Oregon and Brookings, Oregon

"each over regular routes without having first received authority from the Public Utilities Commissioner of Oregon to do so, in violation of Section 115-509 O. C. L. A. as amended and supplemented and in violation of Rule 12 of said Rules and Regulations of the Commissioner.

"B. By maintaining regularly scheduled service between various points in Oregon, including those set forth in III A. above without having first

filed a schedule or schedules setting forth the termini between which service is rendered, the hours of departure and arrival as required by Section 115-506 O. C. L. A. as amended and supplemented and as further required by Rule 3 of said Rules and Regulations of the Commissioner.

"C. By maintaining and operating both a fixed termini common carrier class of service and an anywhere-for-hire common carrier class of service with the same vehicle or vehicles in violation of the provisions of Section 115-509 O. C. L. A. as amended and supplemented.

"D. By transporting various commodities between fixed termini as more particularly set forth in III A. above and handling Collect on Delivery (C. O. D.) shipments without securing, providing, and filing with the Commissioner a C. O. D. Bond as required by the provisions of Section 115-522 O. C. L. A., as amended and supplemented and as further required by Rule 6 of the said Rules and Regulations of the Commissioner.

"WHEREFORE, complainants pray:

"a. That defendant be required to answer the charges herein;

"b. That the charges herein be investigated and hearing held thereon:

"c. That, at the conclusion of such investigation and hearing, an appropriate order be entered revoking the permit or permits held by defendant; and

"d. That such other and further order or orders be made as the Commissioner may consider proper in the premises."

On 7 July 1947, Horger, as defendant, answered the complaint. Other parties were permitted to intervene and pursuant to notice and order by the Commissioner a hearing was held. Testimony was offered by both parties, briefs were filed, and on 23 December 1947 the

Commissioner entered his "order number 18978" revoking Horger's permit on the basis of findings and conclusions therein set forth. The findings of the Commissioner recite the provisions of Horger's permit; summarize the charges filed by the complainant; recite the provisions of certain statutes and rules of the commission which will hereafter receive our attention; and then continue as follows:

"By stipulation between the parties, certain facts were established which are summarized as follows:

"1. Each of the parties complainant is a common carrier of property operating regular scheduled fixed termini service under appropriate authority issued by the Public Utilities Commissioner of Oregon.

"2. The Defendant has regularly transported commodities between Portland and North Bend, Portland and Coos Bay, Portland and Coquille, and North Bend and Brookings.

"3. The route most commonly used by Defendant in operating between Portland and the points named was Highway U. S. 99 to Drain, thence over Oregon Highway 38 to Reedsport, thence over Highway U. S. 101 to the points mentioned. Occasionally, Defendant varied this route by using U. S. 99 to Roseburg, thence by Oregon 42 to Coos Junction, and thence to Coos Bay by U. S. 101.

"4. The Defendant handled C. O. D. shipments without having filed with the Commissioner a bond as provided in Sec. 115-522, O. C. L. A., and as further provided in Rule 6 of the Rules and Regulations of the Commissioner.

"5. Defendant used identical terminal facilities in Portland and North Bend to those used by fixed termini carriers.

"6. Defendant maintained terminals at Port-

land and North Bend which were used for the purpose of assembling and distributing general commodity freight by means of pick up and delivery equipment used in conjunction with line haul equipment operated over the stipulated routes.

"7. Defendant transports between the points covered by the Complaint the same type of commodities as to variety and size and general character as do the Complainants between the points covered by the Complaint.

"Exhibit No. 11, in evidence, discloses the fact that Defendant made daily trips between Portland and Coos Bay, and Coos Bay and Portland, without regard to the amount or quantity of freight to be hauled. Loads were often far below capacity of equipment used, but the trips were made despite this fact. The departure and arrival times between Defendant's termini were consistently uniform and constituted a predetermined schedule.

"The advertising and solicitation used by Defendant constituted a holding out to the general shipping public that Defendant would accept general commodity freight in any quantities for shipment from and to Portland and Coos Bay, and point intermediate thereto. The solicitation of shippers made by Defendant's employees were of the class which would require and need a service which would be scheduled daily with predetermined departure and arrival times and which would be dependable in its adherence to schedules.

"While no statutory proceeding had been taken against Defendant in connection with his operation under his common carrier permit, he had knowledge that his operations were questionable and were being observed for the purpose of determining violation of his operating authority. Defendant possessed this knowledge long prior to the present complaint.

"The distinguishing attributes of common carrier fixed termini service and of common carrier

anywhere-for-hire service were established by Order # 18784 of the Public Utilities Commissioner of Oregon dated December 18, 1947, and entered in the Complaint proceeding entitled J. W. McCracken, et al., v. American Trucking Service Co. The distinguishing attributes in said order established are herewith made a part of these findings.

The conclusions of the Commissioner were as follows:

"From the foregoing findings, it must be concluded that the Defendant is operating a common carrier fixed termini service in violation of his permit authority P. U. C. 1625-1 authorizing common carrier anywhere-for-hire service, and without having obtained permit for such operation contrary to the provisions of Section 115-509, O. C. L. A., and Rule 12 of the Rules and Regulations of the Commissioner.

"It is further concluded that by operating as a fixed termini common carrier, Defendant is in violation of Section 115-506, O. C. L. A., and Rule 3 of the Rules and Regulations requiring fixed termini common carriers to file time schedules, and Section 115-522, O. C. L. A., and Rule 6 of the Rules and Regulations requiring fixed termini common carrier to file C. O. D. bond.

"It is further concluded that the violations of the Defendant are with his full knowledge and are intentional, and that Defendant's permit should be revoked."

Thereafter the plaintiff Horger sought a review of the order of the Public Utilities Commissioner by the suit filed in the circuit court. The trial court, upon motion of the plaintiff Horger, suspended the operation of the cancellation order of the Commissioner pending final disposition of the cause. On 7 January 1948 the Public Utilities Commissioner filed his answer

in circuit court, denying that his order was erroneous and praying that the court proceed to review the same, and that upon review it be sustained in its entirety. The other defendants were allowed to intervene and supported the contention of the Commissioner. On 5 March 1948 trial of the issues was had before the circuit court. In addition to the record of the proceedings before the Commissioner, additional evidence was taken by the trial court. O. C. L. A., § 112-4,121 provides in part as follows:

"* * * If, upon the trial of a suit, evidence shall be introduced which is found by the court to be different from that offered upon the hearing before the commissioner or additional thereto, the court, before proceeding to render judgment, unless the parties to such suit stipulate in writing to the contrary, shall transmit a copy of such evidence to the commissioner and shall stay further proceedings in said suit for 15 days from the date of such transmission. * * *"

Pursuant to the provisions of that section, the following written stipulation was executed by the parties. It was duly signed by the attorney for the plaintiff and attorney for the Commissioner and by one of the attorneys for defendants in intervention:

"It is stipulated by and between the Plaintiffs, Defendant, and Defendant in Intervention that the evidence introduced in the above entitled court and cause shall not be referred to the Public Utilities Commissioner of Oregon as provided in Section 112-4,121, and that said suit shall be determined by the court upon the law and facts of record."

At the commencement of the trial before the circuit court, the following appears of record:

"MR. LAIRD: [of attorneys for the Defendant] Before I proceed with the opening statement:

I offer to stipulate that the order under consideration, PUC Oregon Order was No. 18978, in the case of Consolidated Freightways and others against C. C. Horger, doing business as Oregon Freight Lines, and that the findings set forth in the Order are supported by cogent, competent, material and substantial evidence.

"If counsel for the plaintiff in this case will agree to such a stipulation, we might proceed to the arguments on the law in the case.

"Is that agreeable?

"MR. WHITE: It is agreeable, with the exception of the findings pertaining to wilfull and intentional violation.

"MR. LAIRD: On the matter of intention, I assume you refer to the finding on page 6 of the Order, which is the second paragraph from the top of the page.

"MR. WHITE: That is correct. And further, the last paragraph on the same page, under conclusions.

"MR. LAIRD: That is a conclusion which was drawn from the findings of fact.

"MR. WHITE: I understand that."

In view of the stipulation that the findings of the Commissioner, with the exception of the finding pertaining to willful and intentional violation, are supported by cogent, competent, material and substantial evidence, we shall not set forth in this opinion the evidence supporting the stipulated findings. It should be added, however, that we have reviewed the evidence and that in our opinion it does support the findings as set forth in the stipulation. The question of law for our consideration is whether the stipulated facts authorized the action of the Commissioner in revoking

the permit. The relevant statutes in effect at the time of the alleged violations are the following:

"Common carriers shall be classified as fixed termini common carriers or anywhere-for-hire common carriers according to the type of service rendered or offered in the tariff and schedule proposed. Fixed termini carriers shall file a schedule setting forth the termini between which service is rendered, the hours of departure and arrival and tariffs and classifications governing rates. Anywhere-for-hire common carriers shall not be required to file a time schedule, but shall be required to file a tariff that fixes a charge for the use of their vehicles; said charge shall be just, reasonable and fair, and shall not be unduly discriminatory prejudicial, or preferential. * * *" O. C. L. A., § 115-506.

"* * * It shall be unlawful for any person to operate any motor vehicle on any highway in this state as a common carrier, either as a fixed termini or anywhere-for-hire carrier, a contract carrier, private carrier or special carrier in the transportation of persons or property or both without first applying for and obtaining, in addition to the license required by law, a permit from the commissioner covering the proposed operation.

"The commissioner shall prescribe forms of applications for permits for the use of applicants and shall make regulations of the filing thereof.

"In the case of common carriers and contract carriers the application shall state the ownership, financial condition, equipment to be used and the light and combined weights thereof, the physical property of the applicant, character of service (whether transportation of property or of persons), the district or territory in which operation is to be conducted, and if upon fixed route, the termini thereof, and such other information as the commission may require.

"* * *

"No vehicle shall be operated in more than one of the classes, covered by the provisions of this act, except contract, anywhere-for-hire and private carriers may haul and transport logs, piling, and poles;

\* \* \*

"" \* \* \*

"The commissioner shall, in issuing permits, classify the applicants as to their proper class under the law and no carrier shall operate in a different class without permit from the commissioner.

"" \* \* \*

"If after notice and hearing the commissioner finds that any carrier is operating any vehicle in a class other than that for which such permit is issued, then the commissioner shall either revoke or suspend the permit or reclassify the vehicle." O. C. L. A., § 115-509.

"" \* \* \* The common carriers operating between fixed termini must file also a satisfactory bond in the penal sum to be fixed by the commissioner not to exceed $2,500, conditioned that such carrier shall make compensation to shippers and/or consignees for all property and/or money belonging to shippers and/or consignees, and coming into the possession of such carrier in connection with its business. \* \* \*" O. C. L. A., § 115-522.

"(1) Permits when issued shall be valid until revoked; provided, however, if at any time after notice to permittee and upon hearing had before commissioner the continued operation be found by him to be against the public interest or unduly congesting the highway or fraught with substantial danger to users of the highway or to adjacent property or facilities or to the public or inflicting substantial damage to the highway, thereupon the commissioner shall cancel the permit so investigated or condition the operation thereunder as conditions in said respect require.

".(2) Permits or licenses shall be suspended or canceled by the commissioner after hearing complaint and notice or upon his own motion when:

"* * *

".(b) The permittee, licensee, or his agents or employes have repeatedly violated this act or other highway or motor laws of this state, or

"(c) The permittee, or licensee, has repeatedly and intentionally violated or avoided any order, rule or regulation of the commissioner, * * *" O. C. L. A., § 115-515.

▰ The two statutory provisions authorizing the revocation of a permit are found in O. C. L. A., §§ 115-509 and 115-515. Both provisions were repealed by chapter 467, Laws, 1947, but were simultaneously re-enacted without any change affecting this case. Our task is to apply the provisions of the statute to the stipulated conduct of the plaintiff and to determine whether or not he has been operating any vehicle in more than one of the classes covered by the provisions of the Motor Vehicle Transportation Act, (O. C. L. A., § 115-509, Oregon Laws, 1947, ch. 467, p. 775), and has been found by the Commissioner, after notice and hearing, to have been so operating. (O. C. L. A., § 115-509 (5), Oregon Laws, 1947, ch. 467, sec. 9, par. 5, p. 777) or whether in any respect he has repeatedly violated the Motor Transportation Act (O. C. L. A., § 115-515 (2) (b)). The position of the plaintiff appears to be that the statute does not sufficiently define the terms "fixed termini carrier" and "anywhere-for-hire carrier", and further, he contends that at the time of the alleged violations, the Commissioner had never classified carriers as fixed termini carriers or anywhere-for-hire carriers according to the type of service rendered or offered in the tariff and schedule proposed. We think the

statute has sufficiently established a general standard pursuant to which the Commissioner was properly empowered through the administrative process to determine whether a permittee is operating in one or the other of the two classifications or in both. It is apparent that the two terms were used as "words of art" or "technical terms". In *Dorsey v. Oregon Motor Stages,* 183 Or. 494, 194 P. (2d) 967, this court said:

> "Obviously, the phrase 'local schedules', is an expression of the kind which § 235 of the Restatement deems a technical term or a word of art. The agreement before us, in addition to using the term just mentioned, contains many others of like kind. A few are: 'fixed termini carrier', 'Public Utilities Commissioner permit', 'certificate of public convenience and necessity', 'normal weekday movement', 'equipment emergency', 'regular line haul bus schedules', 'anywhere for hire common carrier', and 'rate per bus mile'. Plainly, the draftsman of the instrument couched it in the technical language of transportation men * * *".

█ It is well established that, if need be, expert testimony as to the meaning of technical words may be received in evidence. *First National Bank of North Bend v. U. S. F. & G. Company,* 127 Or. 147, 271 P. 57; 32 C. J. S., Evidence, § 482, p. 138. We think, however, that any layman with the slightest familiarity with our motor transportation system would have no difficulty in identifying the essential characteristics of each type of service. In this case the ordinary meaning of the terms in question is in harmony with the technical or trade meaning as understood by those engaged in the transportation business. The receipt of evidence as to the meaning of "fixed termini carrier" and "anywhere-for-hire carrier" was not prejudicial to the rights of the plaintiff. *Hurst v. Lake & Co. Inc.,* 141 Or. 306,

16 P. (2d) 627, 89 A. L. R. 1222. The rule concerning the interpretation of technical words is so adequately elucidated in *Dorsey v. Oregon Motor Stages,* supra, that further discussion is unnecessary. We doubt if a labored statutory definition could make the words ";anywhere-for-hire" any more definite than they now are. It is equally clear that a fixed termini common carrier is a person who, according to a regular schedule, transports persons or property by motor vehicle between two or more named points as the respective ends of termini of a regular route or routes. The two provisions concerning the classification of common carriers should be read together. O. C. L. A., § 115-506 provides that "Common carriers shall be classified as fixed termini common carriers or anywhere-for-hire common carriers according to the type of service rendered or offered in the tariff and schedule proposed". O. C. L. A., § 115-509 provides that "The Commissioner shall, *in issuing permits, classify* the applicants as to their proper class under the law * * *". The statute creates two classes. Since it also provides that no vehicle shall be operated in more than one of the classes and that no carrier shall operate in a different class without a permit, it follows that the classes are mutually exclusive. That a fixed termini carrier is required to maintain a regular schedule between specified points is made clear by the requirement of O. C. L. A., § 115-506, to the effect that he must file a time schedule and tariffs and classifications governing rates. The Commissioner classifies a common carrier when he issues a permit based on an application stating the district or territory in which the operation is to be conducted, "and if upon fixed route, the termini thereof". The terms "fixed termini carrier" and "anywhere-for-hire carrier" are not only words of art in the transpor-

tation business, but they have been used by the courts, legislatures and commissions as conveying definite and distinctive meanings without necessity of definition. In re Worrell (Missouri Public Service Commission) P. U. R. 1928 A, p. 793; U. S. Code, Title 49, § 308; *Carson v. Woodram*, 95 W. Va. 197, 120 S. E. 512; *State ex rel Board of R. R. Comr's. v. Lischer Bros.*, 223 Iowa 588, 272 N. W. 604; *New York, N. H. & H. Railroad v. Deister*, 253 Mass. 178, 148 N. E. 590; *Application of Kassebaum*, 142 Neb. 645, 7 N. W. (2d) 464.

As early as 1928 the Oregon Public Service Commission in Order No. 1584 said:

"The operations of anywhere-for-hire carriers are not confined to any fixed route or between fixed termini. In other words, such carriers operate on call from their stands to points anywhere in this state or other states as the occasion may require. On the other hand, regular line carriers are required to operate between fixed termini over a regular route at the times set out in their schedules, which schedules must be maintained day in and day out and year in and year out regardless of whether or not the carrier has tonnage available for transportation. * * *

"Manifestly it would be inequitable to permit anywhere-for-hire carriers to operate over a route traversed by regular line carriers on the same basis of rates. Such a practice would inevitably result eventually in the total elimination of regular line service to the detriment and inconvenience of the shipping public for the reason that the anywhere-for-hire carriers could come and go at will and would only be required to transport such commodities as they saw fit, operate at such times as ample tonnage was offered and during the high business peak of the year." Re Anywhere-for-Hire Carriers, P. U. R. 1928 D, pp. 428, 429.

The findings of the Commissioner as incorporated in the stipulation and as shown by the evidence, demonstrate that the plaintiff was operating as an anywhere-for-hire carrier and was also operating according to a regular advertised schedule in transporting property by motor vehicle between two or more fixed points as the respective termini of a regular route or routes. He established substantial terminal facilities and buildings at both ends of an advertised regular route between Portland and North Bend. He employed a regular pick-up service for the collection of freight which was taken to the terminal in conjunction with his line haul equipment. He made regular trips between the fixed termini. By advertising, he held himself out as furnishing the type of service which was furnished by the companies which received fixed termini permits. Taken as a whole, the evidence shows that he was operating as a fixed termini carrier without a permit therefor.

It appears from the evidence that it is common practice for carriers who operate on a regular schedule between fixed points to handle C. O. D. transactions and deliveries, whereas that type of service is seldom furnished by common carriers operating anywhere-for-hire. Accordingly, the statute requires that fixed termini carriers must file a satisfactory bond, conditioned that the carrier shall make compensation to shippers or consignees for all property *or money* coming into the possession of such carrier. O. C. L. A., § 115-522. Anywhere-for-hire operators are not required to give such a bond. The plaintiff handled C. O. D. shipments without giving the required bond.

In *Falwell v. United States,* 69 F. Supp. 71, a contention was made which is similar to that of the plaintiff in the instant case. The question related to the

alleged right of an irregular route carrier to carry on regular route operations. The court said:

"This argument, as we understand it, amounts in the end to this: That a certificate for irregular-route operations over a specified territory carries no restrictions as to the highways (or routes) over which the carrier may operate within the territory or between the points specified in his certificate; and that the carrier is likewise under no prescription or restriction as to schedules of service or quantity or quality of service. And that, therefore, the holder of a certificate for irregular-route operations may, if he choose, utilize his rights or any part thereof to establish regularly scheduled operations over any highway within his territory—or in other words, to conduct his operations in the form of regular-route operations between any points covered by his certificates. And this, even if by so doing he parallels the service rendered by any number of other carriers holding regular-route certificates for operations between the same points.

"With this contention we cannot agree. To do so would grant to holders of irregular-route certificates a free hand to operate as they chose; to operate irregularly over such parts of the territory as they might choose and to establish regular-route operations where they so desired. An irregular-route certificate would be authority to conduct either or both forms of operation at the carrier's choice. It would nullify the distinction between regular and irregular route carriers and would nullify the power of the Commission to establish and maintain comprehensive and efficient service adjusted to the public need and free from destructive competition between carriers."

Our conclusion that the plaintiff was operating as a fixed termini carrier in violation of the statute is supported by the following authorities: *Re Bohn,*

P. U. R. 1918 B, p. 288; *Motor Carriers' Association v. McCormick Steamship Line* (California Railroad Commission) P. U. R. 1922 C, p. 474; *Richardson v. McKelverry* (California Railroad Commission) P. U. R. 1923 B, p. 49; *Interstate Commerce Commission v. Fordham Bus Corporation*, 38 F. Supp. 739; *Transportation Activities of Brady Transfer and Storage Company* (Interstate Commerce Commission) 47 M. C. C., 23; *Brady Transfer and Storage Company*, 80 F. Supp. 110 (Affirmed by Per Curiam Opinion, 69 S. Ct. 239; *State v. Mercer*, 215 Iowa 611, 246 N. W. 406; *State v. Boyd Transfer & Storage Co.*, 168 Minn. 190, 209 N. W. 872.

The plaintiff relies upon *Application of Kassebaum*, supra. In that case it was held that the legislature had not granted to the commission any power to classify carriers as regular or irregular route carriers, nor was there any evidence of legislative intent to make the two types of service mutually exclusive. The case was distinguished on these grounds by the Interstate Commerce Commission in *Transportation Activities of Brady Transfer and Storage Company*, supra. In view of the difference between the Nebraska statutes and those of Oregon, the Kassebaum case is not in point.

In view of the provisions of O. C. L. A., § 115-509 we hold that the Commissioner was authorized, after notice and hearing and upon finding that the plaintiff was operating vehicles in a class other than that for which the permit was issued, to "either revoke or suspend the permit or to reclassify the vehicle". O. C. L. A., § 115-509. The Commissioner has made such a finding and it was within his sound discretion to revoke the permit. It will be observed that O. C. L. A., § 115-515, supra, also authorizes the cancellation

of a permit if the permittee has repeatedly violated the act or if the permittee has repeatedly and intentionally violated or avoided any order, rule or regulation of the Commissioner. The testimony taken before the circuit court related to the charge that the plaintiff had been guilty of intentional violations. Under the express terms of the statute we find it unnecessary to determine whether or not the plaintiff intentionally violated any order of the Commissioner since we have found that he repeatedly violated the provisions of the Transportation Act itself. The facts found by the Commissioner, upon the existence of which depended his legal authority to revoke the permit, are supported by cogent, competent, material and substantial evidence. There being no abuse of discretion, his order revoking should be affirmed. If in the future, plaintiff should apply for a new permit, other questions may arise, but they need not be anticipated here.

The decree of the circuit court is reversed and the order of the Commissioner revoking the permit is affirmed.

BELT, J., did not participate in this opinion.

On petition for rehearing filed January 19, 1949.

*Thomas J. White* and *Irving B. Rand,* both of Portland, for respondent, for the petition.

*George Neuner,* Attorney General, and *E. L. Graham,* Assistant Attorney General, both of Salem, and *William B. Adams, Alfred H. Corbett,* and *Koerner, Young, Swett & McColloch,* all of Portland, for appellants, contra.

BRAND, J.

■ The petition for rehearing presents no issue which has not already received the consideration of the court. It graphically calls to our attention the hardships and loss to which the petitioner will be subjected if his present permit is revoked, and if he cannot secure a new one. We had thought that our former opinion made it clear that we were not passing upon the petitioner's right to the issuance of a new permit. That question could only arise if, in the future, he should apply for a new permit. As we indicated, the findings of the Commissioner were supported by cogent, competent, material and substantial evidence. He therefore had statutory authority to revoke the permit. The two statutory provisions which authorize the revocation of permits are set out in our original opinion. Both of them vest discretion in the Commissioner. Under O. C. L. A., § 115-509 (5) and under the similar provisions of Laws, 1947, ch. 467, section 9, par. 5, the Commissioner may either revoke or suspend the permit if, after notice and hearing he finds that the permittee has violated the provisions of the paragraph in question. O. C. L. A., § 115-515 (b) (reenacted in Laws, 1947, ch. 467, section 15, 2.) also provides that in the event of repeated violations of the act, the Commissioner may either suspend or cancel the permit. We found no evidence of abuse of discretion in the action of the Commissioner in revoking the permit, and therefore affirmed the order.

The petitioner expresses apprehension lest in the future he be denied a new permit to operate because the statute provides that:

"No permit shall be granted to any person if the commissioner finds that he is not capable of

conducting the transportation service contemplated and in compliance with the law and rules and regulations of the commissioner *or who has been an habitual or intentional violator thereof.* * * * " O. C. L. A., § 115-509. (Italics ours).

█ If in the future, the petitioner is denied a permit, it will not be because such denial, if any, is rendered necessary by the decision of this court. We upheld the order of the Commissioner because, after notice and hearing, the Commissioner found that the petitioner was operating a vehicle in a class other than that for which his permit was issued. O. C. L. A., § 115-509 (5). We upheld the Commissioner's order because the permittee had repeatedly violated the act. O. C. L. A., § 115-515 (2) (b). We did not hold that the petitioner has been an habitual or intentional violator of the act within the meaning of O. C. L. A., § 115-509 (1), which section prohibits issuance of permits to persons who have been habitual or intentional violators. In the original opinion we stated, "we find it unnecessary to determine whether or not the plaintiff intentionally violated any order of the commissioner", and we made no finding that he had intentionally violated the statute. The Vehicle Code provides that the violation of the act shall constitute a misdemeanor. In view of this fact and of the wording of the section which prohibits the issuance of a permit to an habitual or intentional violator, we think that an "intentional" violation means more than the mere intentional doing of an act which the court finds to be in violation of the statute. It means the doing of an act, intending thereby to violate the statute. It implies an intent to act illegally.

Evidence was taken in the circuit court concerning the charge of intentional violation, but since we found

that the action of the Commissioner should be affirmed, whether or not the violation was intentional, we refrained from passing upon that question. Nor can we say that the repeated violation of an act of necessity renders the actor an habitual violator within the meaning of the statute. Assuming therefore, that the Commissioner abides by his order of revocation, it follows that this court has not determined the issues upon which would depend the petitioner's right to secure a new permit. If and when application for a new permit within the terms of the statute is made, it will be for the Commissioner to determine in the first instance whether or not the statute prohibits the issuance of a permit, that is to say, whether or not the petitioner has been an habitual or intentional violator of the act.

Whether or not the Commissioner would have the right, and if so, would deem it proper to modify the order of revocation by providing for a suspension rather than a revocation of the permit, is a question which is not before us, and concerning which we express no opinion. If the Commissioner has such power, and should in his sound discretion, exercise it, then so far as the italicized portion of O. C. L. A., § 115-509 is concerned, no question would arise with reference to the right of the plaintiff to secure a new permit. His old permit, although suspended, would remain valid until revoked. O. C. L. A., § 115-515.

The foregoing comments should make clear the meaning of the court when in its original opinion it said, "If in the future, plaintiff should apply for a new permit, other questions may arise, but they need not be anticipated here."

The petition for rehearing is denied.