STATE OF IOWA, ex rel. BOARD OF RAILROAD COMMISSIONERS, Appellant, v. LISCHER BROTHERS et al., Appellees.

No. 42946.

JUNE 21, 1935.

OPINION ON REHEARING APRIL 6, 1937.

John C. DeMar, Commerce Counsel, and Stephen Robinson, Asst. Commerce Counsel, for appellant.

Clark, Hale & Plock and Floyd W. Miller, pro se, for appellees.

DONEGAN, J.—This appeal is now before us on a resubmission after rehearing granted. On the original submission the decree of the trial court dismissing the plaintiff's petition and dissolving a temporary injunction was affirmed. That opinion appears in 261 N. W. 634.

In this case the plaintiff's petition alleges that the defendants, a copartnership, have for some time been operating a motor vehicle or vehicles for transportation of freight for compensation between fixed termini and over a regular route, without first procuring a certificate of convenience and necessity from the board of railroad commissioners of the state of Iowa and complying with other provisions of chapter 252-A1, Code of Iowa, 1931 (section 5105-a1 et seq.), and without paying the motor carrier tax as provided by chapter 252-A2 ,Code of Iowa, 1931 (section 5105-a40 et seq.), and asked that they be enjoined from further violations of the said statutes, and that the court fix and determine the amount of motor carrier taxes due the plaintiff and render judgment therefor. In their answer defendants admit that they are a copartnership, and that they do a trucking business, but they deny that they have in any manner violated chapter 252-A1 of the Code of Iowa, and allege that the trucking operations carried on by them are wholly under the provisions of chapter 252-C1 of the Code of Iowa (section 5105-c1 et seq.), under a permit issued by the board of railroad commissioners, and that they have at all times conducted their trucking operations in accordance with the provisions of said chapter. Further answering, the defendants allege that the operations conducted by them are in no way different from but are exactly the same as the operations which the plaintiff, in a former case bearing the same title and between the same parties, endeavored to have

them enjoined from doing, and which the supreme court of Iowa held did not constitute a violation of the provisions of chapter 252-A1 and chapter 252-A2 of the Code of Iowa, 1931. In the former case, referred to in defendants' answer, practically the same charges were made by plaintiff as are made in this case, and the opinion on appeal in that case may be found in 215 Iowa 607, 246 N. W. 264. In that opinion this court found that the defendants did not advertise or solicit business, and operated only on call; that such calls were usually made by telephone, but sometimes in person by salesmen or merchants; that defendants had no schedule of trips or when they were to be made; that the trips made were on call from early morning until late at night; that the trips between the alleged termini were different each week, sometimes being once a week, sometimes twice, at other times three or four times a week, and, in some weeks, no trips at all; that there was no regular rate charged for the freight hauled between the alleged termini; that no schedule of rates was filed; that the charge made for services was according to time consumed and difficulty in making delivery; that at times they refused to accept goods for shipment and such goods were not transported by them; that they had no standing contracts with shippers at either of the alleged termini of their route, but hauled freight only when called by the persons who had freight to be hauled. In that case the trial court held that the defendants were not operating a trucking business in violation of chapters 252-A1 and 252-A2 of the Code of Iowa, 1931, and dismissed plaintiff's petition, and on appeal the decree of the trial court was affirmed. In the instant case the trial court found that the operations of the defendants were pursuant to chapter 252-C1 of the Code of Iowa, 1931, and not in violation of the provisions of chapters 252-A1 and 252-A2 of the Code of Iowa, 1931; and the trial court dissolved a temporary injunction which had issued and dismissed the plaintiff's petition.

In our original opinion in this appeal we stated that there is no material difference between the facts in the former case and the facts shown by the record in the instant case. In this resubmission, the plaintiff-appellant insists that there is a vast difference between the facts presented in the former appeal and those presented in the appeal in the instant case, and that, when the facts in the case now before us are fully and properly con-

sidered, it will be found that the defendants-appellees are operating their trucking business as motor carriers and in violation of the provisions of chapters 252-A1 and 252-A2 of the Code of Iowa, 1931, and that they are not, as they allege, conducting their operations wholly under the provisions of chapter 252-C1 of the Code of Iowa, 1931.

The facts of this case are presented in a voluminous abstract and denial of and amendment to abstract, and it is not surprising if, in the original opinion in this case, these facts may have been somewhat confused with the facts on the former appeal. At this time, therefore, we will try to examine the facts disclosed by the evidence and determine the conclusions which we think should be drawn therefrom. In this effort we are assisted by the very exhaustive brief of the appellant, in which the evidence has been digested and applied to the establishment of certain ultimate facts, which, the appellant claims, are entirely different from those found to exist in the former appeal.

First, as to the operation between fixed termini and over a regular route; we think the evidence clearly shows that the appellees were operating their trucks at practically regular times on several days of the week between Burlington and Wapello, through Mediapolis and Morning Sun, over paved highway No. 61, with occasional, if not frequent, extensions of their trips to Columbus Junction and Columbus City; and that on at least one day of each week they made regular deliveries from Muscatine, Iowa, over paved highway No. 61 to Wapello, and, over roads connecting with No. 61, to Fredonia, Columbus Junction, Columbus City and Oakville. From the testimony of Wilson and Baugh, inspectors for the board of railroad commissioners, and from the evidence presented by bills of lading which were introduced in evidence, it seems to be established beyond dispute that regular trips were made by the trucks operated by defendants between Burlington and Wapello, on Monday, Tuesday, Thursday and Friday of each week, and that on Wednesday of each week a regular trip was made from Muscatine to Wapello. A tabulation of these trips, appearing in the appellant's brief and argument, shows that from May 1 to August 31, 1934, such trips were made from Burlington to Wapello on four different Mondays in May, four in June, four in July, and four in August; that five such trips were made over said route on five different Tuesdays in May, four in June, three in July, and four in

August; that four trips were made over said route on four different Thursdays in May, four in June, three in July, and four in August; and that four trips were made over said route on four different Fridays in May, five in June, three in July, and five in August. It also appears from said tabulation that the trucks of the defendants made regular trips over the route from Muscatine to Wapello on four different Wednesdays in May, four in June, four in July and four in August. It also appears from the record that, upon the filing of the petition on July 25, 1934, a temporary writ of injunction issued, and that on July 30 a motion to dissolve this injunction was filed. According to appellant's tabulation no regular trips were made on either route on Saturdays or Sundays or legal holidays, and with these exceptions the only days on which regular trips were missed during the entire period from May 1 to August 31, 1934, were a few days during the last week of July and the first day of August.

From the evidence presented by the plaintiff, as well as some of the witnesses for the defense, we think it appears quite clearly that the trucks of the defendants-appellees on Mondays, Tuesdays, Thursdays and Fridays of each week regularly left Wapello for Burlington sometime after noon; that they ordinarily reached Burlington around two o'clock or earlier; and that on the return trip to Wapello they left Burlington around four o'clock on the same afternoon and reached Wapello around 4:45 to 6:45 p. m. That on the Friday trips to Muscatine the trucks left Wapello after noon and usually left Muscatine around five o'clock. The evidence further shows that, while there are several other truckers in Wapello who are well-known to the business men there, practically all the trucking business between Burlington and Wapello is done by the defendants. It also shows, by the testimony of one of the defendants himself, that the defendants make a regular charge on service between Burlington and Wapello of 20 cents per hundred on most lines of freight, with a higher charge of 25 cents per hundred on fruit, and that all shippers are charged the same price for the same kind of freight. The evidence also shows that the defendants have regular rates on freight hauled by them from Muscatine to Wapello and other points to which the deliveries are made.

The evidence further shows that so regular was the service furnished by the defendants between Burlington and Wapello

that they paid Boyd Terminal Company at Burlington $1.00 per month for telephone service; that orders for deliveries from Burlington business houses were received at Boyd Terminal Company's place of business and the driver came there and got the orders or someone at the Boyd Company's place called the driver around town in Burlington and gave him the message. It also appears that the Boyd Terminal Company received shipments arriving at their terminal over other motor carriers for delivery via defendants to Wapello; that, if these shipments arrived at the terminal before the defendants' truck left for Wapello, they were taken to Wapello on the same day; but if they did not arrive at the terminal until after defendants' truck had left, they were held over at the terminal and were picked up by the defendants the next day. Nor was there any limit as to the persons for whom they would haul goods over the routes traveled by them. One of the defendants himself testified that, from January 18, 1933, the day after the opinion of this court was handed down in the former appeal, until July 25, 1934, the date on which the temporary injunction was issued, they had not refused to make a trip from Burlington to Wapello for any merchant in Wapello, and that the same was true of the trips from Muscatine to Wapello. While the driver of the truck testified that, "if the credit of the customer is bad, we will not make a trip for him," he also testified that he did not know of any date when he refused to go from Wapello to Burlington and pick up freight at Burlington and carry it to Wapello, and that his refusal to haul freight from Burlington to Wapello was during the period from July 25, 1934, to August 3, 1934, which is the period between the issuance of the temporary injunction and the close of the hearing on the motion to dissolve. It seems to be well settled law that a common carrier does not cease to be such by refusing to carry for shippers whose ability to pay is doubtful. Terminal Taxicab Co. v. Kutz, 241 U. S. 252, 36 S. Ct. 583, 60 L. Ed. 984, Ann. Cas. 1916D, 765; Piercely v. Public Service Comm., 73 Pa. Super. 212; State v. Washington Tug & Barge Co., 140 Wash. 613, 250 Pac. 49.

Section 5105-a1 of chapter 252-A1, Code of Iowa, 1931, defines motor vehicle and motor carrier as follows:

"1. The term 'motor vehicle', shall mean any automobile, automobile truck, motor bus, or other self-propelled vehicle,

* * * not operated upon fixed rails or track, used for the public transportation of freight or passengers for compensation between fixed termini, or over a regular route, even though there may be occasional, periodic or irregular departures from such termini or route; * * *

"2. The term 'motor carrier' shall mean any person operating any motor vehicle upon any highway in this state."

It will be seen from these definitions that, any person operating any "motor vehicle", as defined in paragraph 1 of the above quoted section, is a "motor carrier", as defined in paragraph 2. Under section 5105-a6 of chapter 252-A1, it is made unlawful for any motor carrier to operate within this state without a certificate from the board of railroad commissioners declaring that convenience and necessity require such operation. Section 5105-a41 of chapter 252-A2, requires every motor carrier to pay a tax for the maintenance and repair of the highway, based on ton-miles of freight travel as computed by section 5105-a42 of said chapter.

The contention of the defendants-appellees is that their operations are not such as to make them a motor carrier, under the provisions of chapters 252-A1 and 252-A2; but that they are furnishing the service of a "motor truck" and are a "truck operator", as defined in section 5105-c1 of chapter 252-C1 as follows:

"1. The term 'motor truck' shall mean any automobile, automobile truck, or other self-propelled vehicle, * * * not operated upon fixed rails or track, used for the public transportation of freight for compensation, not operating between fixed termini, nor over a regular route.

"2. The term 'truck operator' shall mean any person operating any motor truck or motor trucks upon any highway in this state."

In this case we are concerned only with the operations of a truck or trucks for the public transportation of freight, and the question to be determined is, are such operations carried on by defendants as a "motor carrier" and by means of a "motor vehicle", as defined in section 5105-a1; or are such operations carried on by defendants as a "truck operator" and by means of a "motor truck", as defined in section 5105-c1? A further

examination of the definitions above referred to will disclose that the question to be determined in this case is, whether the defendants are operating their trucks between fixed termini or over a regular route, and are subject to the provisions of chapters 252-A1 and 252-A2 of the Code of 1931; or whether the trucks used by them are not operating between fixed termini nor over a regular route, and their operations are, therefore, being conducted under the provisions of chapter 252-C1 of the Code of Iowa, 1931.

In the prior case between the parties, in which the opinion is found in 215 Iowa 607, 246 N. W. 264, it was held that the operations of the defendants' trucks, which were challenged by the state in that case, were carried on by the defendants as motor truck operators under chapter 252-C1. As said in State v. Ooten, 215 Iowa 543, 545, 243 N. W. 329, 330, however, "The fact that the defendant was a permit holder under Chapter 252-C1 does not give him a permanent status as such. The very development of his business may result in imposing upon him the status created by Chapter 252-A1, notwithstanding his original classification."

We think the evidence in this case sufficient to show that the operations carried on by the defendants began to differ from those involved in the former case within a short time after the opinion in that case was announced, and that such changes have progressed to such an extent that the defendants are now, not only operating over a regular route and between fixed termini, but that their trips are regularly made within reasonably defined hours on certain days of each week; that these operations are such that the defendants have practically eliminated all competition between the termini of their routes; that they charge a regular rate for the kinds of freight carried by them; that their service is so regular that they have provided for telephone service at the Burlington end of the termini; that they carry for all persons offering shipments to them between points on the route covered by them; and that the facts of this case in all of these particulars greatly differ from the facts presented in the appeal in the former case.

As said in State v. Rosenstein, 217 Iowa 985, 992, 252 N. W. 251, 255:

"This state is now struggling with difficult problems inci-

dent to the growth of automobile traffic, and the statutes in question should be liberally construed to give effect to their true intent and purpose.''

Under the facts above referred to, and which we think established by the evidence, we feel constrained to hold that the operations conducted by the defendants bring them within the provisions of the law applicable to motor carriers operating between fixed termini and over a regular route, with such regularity and under such conditions that they are now amenable to the provisions of chapters 252-A1 and 252-A2, Code of 1931, and that they are no longer operating under the provisions of chapter 252-C1, Code of 1931.

For the reasons given, the decree of the trial court is, therefore, reversed and the case remanded with instructions to the trial court to enter a decree in conformity with this opinion, and to determine the amount of carrier taxes due to the plaintiff and render judgment therefor.—Reversed and remanded with instructions.

RICHARDS, C. J., and all Justices concur, except MITCHELL, J., who takes no part.