In re Application of Dalton.
James Dalton, appellee, v. Burel F. Kinney, appellant,
Impleaded with W. T. Ellis et al., interveners-
appellees.
70 N. W.. 2d 464

Filed June 3, 1955. No. 33735.

*J. Max Harding*, for appellant.

*James L. Thorpe* and *Heaton & Heaton*, for appellee.

Heard before Simmons, C. J., Carter, Yeager, Chappell, Wenke, and Boslaugh, JJ., and Kokjer, District Judge.

Simmons, C. J.

This is an appeal from an order of the Nebraska State Railway Commission, hereinafter called the commission, granting a certificate of public convenience and necessity to applicant, James Dalton, authorizing the transportation of water and crude oil for drilling purposes only between all points and places in Kimball County, over irregular routes, by motor vehicle in intrastate commerce. The application originally was for a certificate for Cheyenne, Banner, Kimball, and Scotts Bluff Counties.

The matter was set and heard December 2, 1953, before an examiner. The commission acted on the transcript of that hearing and the examiner's report. The interveners in opposition were largely competing certificate holders.

The challenge here, although specifically stated, goes to the sufficiency of the evidence to sustain the order entered. We affirm the order of the commission.

There is ample evidence in the record to sustain a finding of the following factual situation:

Kimball County, in the extreme southwest part of Nebraska's "panhandle," has had a substantial discovery and development of oil. There are now over 100 producing wells. Several companies are drilling and prospecting for oil in the county. It is, as described by the witnesses, a "boom" condition.

The city of Kimball is the county seat of Kimball County where water for drilling is obtainable to be hauled to the wells. There is also an oil development in Cheyenne County, where the city of Sidney is the county seat. There is also a development in Banner County and drilling service, at least, operating out of Scotts Bluff County toward the south.

Large quantities of water and, at times, crude oil are necessarily used in the drilling of wells. A shortage of water or crude oil delays or stops drilling operations. Water is hauled to the drilling operations from water holes, streams, or in Kimball County from the city wells at Kimball. Crude oil is secured at producing wells. Both water and crude oil are hauled in tanks mounted on motor vehicles. The water hauling involved is a highly competitive business.

There is one certificate holder operating out of Kimball. His equipment, service, and insurance qualifications are not satisfactory to the shippers.

The applicant proposes to operate out of Kimball in this business.

There are several intervener certificate holders operating out of Sidney, Nebraska. These certificate holders also operate in Colorado and Wyoming, and at the time of the hearing had a major part of their vehicles either in those states or elsewhere where they could conduct profitable operations.

At least one of the opposing certificate holders has adequate equipment at Sidney and would answer calls for carrier service in Kimball County. However, the

charge for this service is based on an hourly rate, chargeable from Sidney. It consumes about an hour's time at a cost of $10 to operate out of Sidney in excess of time and cost of operation out of Kimball. The delay and added expense element render that service unsatisfactory to drillers.

Objecting certificate holders offered to bring equipment to Kimball from distant points and have it available in 10 hours. Obviously for one common carrier haul, the delay and cost would be unsatisfactory.

They likewise offered to establish a base at Kimball but quite obviously were unwilling to do so unless there was to be a profitable operation there. It could properly be found that the objecting interveners offered common carrier service in Kimball County subject to inconvenience and delay, and in accord with tariff rates from their base at Sidney or elsewhere until such time as they were able to anticipate a profitable operation out of Kimball at tariff rates applicable to the point of origin of the commodity to be carried.

The policy of the state as to common carrier motor transportation as declared by the Legislature, among other things, is to "promote adequate, economical and efficient service by motor carriers, and reasonable charges therefor, without unjust discrimination, undue preferences or advantages, and unfair or destructive competitive practices" and to "develop and preserve a highway transportation system properly adapted to the needs of the commerce of Nebraska." § 75-222, R. R. S. 1943.

The ultimate question for the decision of the commission was whether or not the proposed service is or will be required by the present or future public convenience and necessity. § 75-230, R. R. S. 1943.

In In re Application of Effenberger, 150 Neb. 13, 33 N. W. 2d 296, we held: "Certain duties are imposed upon established carriers to provide service to all the public. This requires service to be rendered where it is

unprofitable as well as where it is profitable. * * * The determination of these questions rests with the railway commission, and its findings and orders will not be interfered with on appeal if any reasonable basis exists upon which they can be supported."

We there stated the rule: "Courts are without authority to interfere with the findings and orders of the railway commission except where it exceeds its jurisdiction or acts arbitrarily."

In the Effenberger case we also held: "Competitive routes will ordinarily be authorized only where the existing carrier refuses or has failed to provide adequate service upon the order of the railway commission. Where the evidence does not show that such a situation exists, the established carrier may properly resist invasion of its field before the commission."

In this instance there appears no order of the commission requiring the existing carriers to provide adequate service. Such an order was not required for here the certified carriers able to render adequate service clearly indicated an unwillingness to furnish the required service except under conditions as to time of service, cost, and adequacy which the carriers desired to control or unless otherwise they could find assurance of profitable operations. The commission accepted the alternative and issued a certificate to an applicant found, and shown without dispute, to be fit, willing, and able properly to perform the service required by the shipping public. Its decision in this regard cannot be held to be unreasonable or arbitrary.

As appellant points out we held in In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507: "The question of the adequacy of service of existing carriers is implicit in the issue of whether or not convenience and necessity demand the service of an additional carrier in the field." That question the commission resolved in favor of the applicant.

We also held in In re Application of Richling, 154 Neb.

108, 47 N. W. 2d 413: "Furthermore, the statute requires that the finding that applicant is fit, willing, and able to perform the proposed service, and that such service is or will be required by the present or future public convenience and necessity, must be sustained by evidence showing that the granting of the certificate was not arbitrary or unreasonable." The evidence here meets that test.

The order of the commission is affirmed.

AFFIRMED.