IN RE APPLICATION OF HAROLD JOHNSON.
HAROLD JOHNSON, APPELLEE, v. RAY PEAKE, NOW R. B. "DICK" WILSON, INC., OF NEBRASKA, ET AL., APPELLANTS.
77 N. W. 2d 670

Filed June 29, 1956. No. 33949.

*Viren, Emmert & Hilmes* and *G. M. Gunderson,* for appellants.

*Jack Devoe* and *James E. Ryan,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This appeal involves a certificate of convenience and necessity granted to the applicant Harold Johnson by the Nebraska State Railway Commission, hereinafter referred to as the commission. Harold Johnson is the appellee herein. The only appellant appearing by brief is Ray Peake, a protesting certificate-holding common carrier. We affirm the order of the commission.

Appellee has been engaged in business since 1948, with headquarters at Alliance, Nebraska. He held an intrastate certificate issued by the commission which provided:

"SERVICE AUTHORIZED: Petroleum products.
ROUTE OR TERRITORY AUTHORIZED: Irregular routes from Superior, on the one hand, and on the other hand, O'Neill, Atkinson, Stuart, Bassett, Springview, Long Pine, Ainsworth, Johnstown, Cody, Merriman, Gordon, Hay Springs, Chadron, and Valentine."

He also held a certificate for interstate commerce which authorized: *"Petroleum Products,* in bulk, in tank vehicles, over irregular routes, from Glenrock, Wyo., and points within five miles thereof, to points in Nebraska on and west of U. S. Highway 183, with no transportation for compensation on return except as otherwise authorized."

On April 9, 1954, he applied for authority to transport "Between all points and places in Nebraska on and west of U. S. No. 183, over irregular routes" for the "Lack of adequate service to territory involved."

Several protestants and interveners resisted the application.

The matter was heard before an examiner, who recommended that the application be denied. Johnson made exceptions to the report.

The commission heard the matter and in its "Opinion, Findings and Order" recited: "The opinion of the Commission differs somewhat from that of the Examiner in his report and recommendation. It is the opinion of the Commission that the applicant should be authorized to service his presently certificated destination territory from all producing, refining, distributing and loading points in the State of Nebraska, with return of rejected shipments authorized in the transportation of the involved commodities except liquified petroleum gas. The transportation of liquified petroleum gas should be authorized from all producing and loading points in Nebraska, as points of origin, to all points and places in Nebraska, on and west of U. S. No. 183, as points of destination, with return of rejected shipments authorized.

"The source of supply of petroleum products shifts from time to time. Neither the Commission nor the carriers have any control over these shifts. Because of this condition it has been the practice and also the policy of the Commission in recent years to grant petroleum carriers authority to serve from all producing, refining, distributing and loading points within the state as points of origin.

"Adherence to this policy does not result in the placing of additional carriers in the field, nor has it disturbed the competitive situation. It has resulted in a continuity of dependable service to the destination areas concerned.

"Insofar as the application relates to the transportation of liquified petroleum gas the Commission is of the opinion that a public demand and need has been demonstrated for the transportation of this commodity to the destination territory on and west of U. S. No. 183. It appears that liquified petroleum has been transported from Huntsman, Nebraska, for the shippers by private carriers and that common carrier service has not been available

to shippers for this transportation. The Commission is of the opinion that shippers are entitled to this service which existing carriers have been unwilling and have failed to provide."

The commission ordered: "That Harold Johnson, Alliance, Nebraska, should be issued a consolidated certificate of public convenience and necessity in Application No. M-9648, Supplement No. 1, authorizing the following operations in Nebraska intrastate commerce:

"A. SERVICE AUTHORIZED: Petroleum and petroleum products, except crude oil and anhydrous ammonia, in bulk in tank vehicles.

ROUTE OR TERRITORY AUTHORIZED: From all producing, refining, distributing and loading points within the State of Nebraska as points of origin, to O'neill (sic), Atkinson, Stuart, Bassett, Springview, Long Pine, Ainsworth, Johnstown, Cody, Merriman, Gordon, Hay Springs, Chadron and Valentine, as points of destination, with return of rejected shipments authorized, over irregular routes.

"B. SERVICE AUTHORIZED: Liquified petroleum gas in bulk in tank vehicles.

ROUTE OR TERRITORY AUTHORIZED: From all producing, refining, distributing and loading points within the State of Nebraska as points of origin, to points and places in Nebraska on and west of U. S. 183, as points of destination, with return of rejected shipments authorized.

NOTE: The authority granted herein, to the extent of any duplication shall not be construed to authorize the issuance of more than one operating authority."

The authority granted the applicant by the commission as to Part A of service authorized broadens materially applicant's points of origin. It does not change the points of destination. As to service authorized under Part B for liquified petroleum gas, the service authorized is an added intrastate authority with a broad base

as to points of origin and points of destination.

Three protestants and one intervener filed a motion for reconsideration and rehearing. The commission overruled the motion.

Three protestants, including Peake, filed notice of appeal and entered appearances here. A brief is filed on behalf of Peake only.

In summary the evidence offered before the examiner and considered by the commission would support a finding by the commission of the following factual situation:

During the last several years various pipeline companies have established terminals in Nebraska and made petroleum products available for intrastate common-carrier delivery at several points in various places in Nebraska. Different petroleum marketers have delivery points at one or more places in this state. Refineries are also located in Nebraska with delivery points at the refineries. The evidence amply sustains the finding of the commission in that regard.

Applicant's customers have requested service from points not within his authority in Nebraska to points within his authority. Applicant has been required to refuse the service and his customers on occasion have been required to furnish it to themselves.

The applicant under his interstate authority had transported petroleum products from Wyoming to his authorized points of delivery in Nebraska. That source of supply is being changed to terminal pipeline points of delivery at Sidney and North Platte. The applicant's customers desire that he should be authorized to serve them from the intrastate points of delivery. The bringing of petroleum products into western Nebraska by pipeline and by production in Nebraska has established additional and large quantities of petroleum products for delivery to customers in that area.

The delivery of petroleum products to customers is a business that requires prompt and efficient service, which in turn requires the ready availability of adequate and

satisfactory carrier service in the area being served. It is a competitive business that requires a satisfied customer. This in turn requires not one but several carriers in the area available to render the adequate prompt and efficient service that the customer requires.

U. S. Highway No. 183 runs generally across Nebraska north and south through Alma on the south to through Springview on the north. The new intrastate pipeline terminals at North Platte and Sidney are in the area west of that highway. Applicant's place of business is in that area. His customers and potential customers are in that area. There is no question of his readiness, ability, and willingness to render service under the new authority granted by the commission.

Applicant's customers as well as petroleum suppliers have sought adequate and satisfactory common-carrier service in the area and have not found it. They testified that their business had not been solicited by certificate-holding carriers who could supply that adequate and satisfactory service.

The present point of delivery of liquified petroleum gas is at Huntsman north of Sidney. The evidence is, as to that product, that other points of delivery will be established in western Nebraska.

Without question there are among the protesting carriers those who have intrastate authority to serve the area involved. Some of them are presently serving customers in the area involved. The larger of these carriers, from the standpoint of business handled and equipment available, do not maintain terminals nor equipment in the area involved. Two of them offered evidence that they were ready, willing, and able to establish terminals and maintain equipment in the area involved and to render the newly required service. They, however, obviously were not ready or willing to do so until it appeared to be economically feasible.

The evidence is ample to sustain the commission's finding that existing authorized intrastate carriers have been

unwilling and have failed to furnish the adequate and satisfactory service in the area that the business requires.

Protestant Peake first presents here the contentions: The failure or refusal of the Commission (1) "to consider and determine the adequacy of existing motor carrier service and the willingness and ability of such carriers to provide any necessary service," and (2) "to hold that appellee had the burden affirmatively to negate those conditions is fatal to the validity of the assailed order as it authorizes the issuance of a certificate of public convenience and necessity."

As to point (1) we need not determine the necessity of such a finding. It appears to have been made. As quoted above, the commission clearly considered and determined a basis for the broadening of the points of origin authority of the applicant as to his existing certificate. As to the liquified petroleum authority, the commission found: "It appears that liquified petroleum has been transported from Huntsman, Nebraska, for the shippers by private carriers and that common carrier service has not been available to shippers for this transportation. The Commission is of the opinion that shippers are entitled to this service which existing carriers have been unwilling and have failed to provide." We find no basis in the record for the contention advanced as to point (2) above.

We deem the contentions to be without merit.

Peake next contends that: "The assailed order is void as not being supported or sustained by competent evidence and as resting on findings similarly without integrity in the evidence. * * * It is the settled policy in Nebraska that carriers already in the field shall, in the public interest, be protected against new and unnecessary competition to the end that sound economic conditions in transportation may be maintained and so that the ability of existing carriers to continue adequate transportation shall not be unduly imperiled."

We have summarized the evidence that was considered

by the commission. As to all three of these contentions Peake relies upon In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507. The language in that opinion upon which Peake relies was analyzed and applied in Houk v. Peake, 162 Neb. 717, 77 N. W. 2d 310. So far as material here, that case dealt with a request for an enlargement of points of origin in an intrastate authority. Factually and legally that case is largely comparable to the instant one. We see no reason for repeating here what was said and held there.

In Dalton v. Kinney, 160 Neb. 516, 70 N. W. 2d 464, we had a case involving a new intrastate authority granted authorizing service in an area which existing intrastate certificate holders were authorized to serve, but were unwilling to do so unless assured of profitable operations. Factually and legally the Dalton v. Kinney case is quite comparable with the instant case as to that question. Our holding there was approved in Houk v. Peake, *supra*.

We deem Houk v. Peake, *supra*, and Dalton v. Kinney, *supra*, controlling here and requiring an affirmance of the commission's order.

We restate the rule: "Courts are without authority to interfere with the findings and orders of the Nebraska State Railway Commission except where it exceeds its jurisdiction or acts arbitrarily." Dalton v. Kinney, *supra*.

The order of the commission is affirmed.

AFFIRMED.