IN RE APPLICATION OF FERGUSON TRUCKING CO., INC. FERGUSON TRUCKING COMPANY, INC., APPELLEE, V. ROGERS TRUCK LINE ET AL., APPELLANTS, WILBUR F. GETTEL, INTERVENER-APPELLANT.

81 N. W. 2d 915

Filed March 22, 1957. No. 34063.

*Martin, Davis & Mattoon* and *J. Max Harding,* for appellants.

*Robert S. Stauffer,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an appeal from the Nebraska State Railway Commission, hereinafter referred to as the commission. The commission granted a certificate of convenience and necessity to Ferguson Trucking Company, a corporation, hereinafter called applicant. A number of certificate holders protested the granting of the certificate. Only a part of them offered evidence before the examiner. They will be referred to as the protestants or by

name. Protestants' assignments of error will be set out as they are determined herein.

We affirm the order of the commission.

The authority granted the applicant was for:

"SERVICE AUTHORIZED: (1) Machinery, equipment, materials and supplies used in connection with the discovery, development, production, refining, manufacture, processing, storage, transmission, and distribution of natural gas and petroleum and their products and by-products; and (2) Machinery, materials, equipment and supplies used in or in connection with the construction, operation, repair, servicing, maintenance and dismantling of pipe lines, including the stringing and picking up thereof.

"ROUTE OR TERRITORY AUTHORIZED:

Between points and places within the state of Nebraska over irregular routes. * * *."

The application of Ferguson Trucking Co., Inc., was filed February 24, 1955. Protests were filed by Peake, Inc., Charles D. Doher, Wheeler Transport Service, Inc., Rogers Truck Line, L. E. Whitlock Truck Service, Inc., Burel F. Kinney, Walter A. Joy, Lewis Coombes, Joy and Coombes, and Herbert L. Johnson.

The matter was set for hearing before an examiner at Sidney, Nebraska, on April 15, 1955. Appearances were made for protestants Rogers, Whitlock, Kinney, Joy, Coombes, and Johnson. Also an appearance was made for Wilbur F. Gettel "as intervener in opposition." The transcript shows no pleading by or in behalf of Gettel.

On April 16, 1955, the second day of the hearing, applicant moved for a continuance to a future date to be fixed by the commission.

Protestants resisted on the basis of noncompliance with rule 4.6 of the commission. There was considerable argument about additional absent witnesses for the applicant, protestants offering evidence out of order, and matters of that kind. Finally the examiner continued the hearing on his own motion. The hearing was later

set for July 21, 1955. The hearing proceeded at that time.

Protestants assign the order of continuance as prejudicial error. They contend that it is in violation of rule 4.6 of the Nebraska State Railway Commission. That rule is: "Any party who desires a continuance shall, immediately upon receipt of notice of the hearing, or as soon thereafter as facts requiring such continuance come to his knowledge, notify the Commission in writing of said desire, stating in detail the reasons why such continuance is necessary. Any such party may be required to submit affidavits in support of such request. The Commission, in passing upon a request for a continuance, shall consider whether such request was promptly made. For good cause shown, the Commission may grant such a continuance and may at any time order a continuance on its own motion. Only under exceptional circumstances will requests for continuance of a hearing be considered unless submitted at least seven days prior to the hearing date."

We think it patent that the rule applies generally to applications made to the commission, as such, for a continuance prior to the beginning of a hearing. We find nothing in the rule that makes it applicable to ordinary motions for continuances during a hearing before an examiner.

We find nothing in the record that would sustain a finding of prejudice to the protestants based upon the continuance granted. Protestants argue that due to the rapid fluctuation of the oil industry that the evidence submitted at the first hearing was of no value when the record was finally completed. The evidence which they state was of "no value" was that of the applicant. On July 21, 1955, at the request of counsel for some of the protestants and by agreement with counsel for the applicants and other protestants, the matter was again continued. Hearings were again had on August 15 and 16, 1955. No claim of prejudice is shown because

of that continuance. We find no merit in the assignment.

Section 75-230, R. R. S. 1943, provides as follows: "Subject to section 75-237, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing and able properly to perform the service proposed, and to conform to the provisions of sections 75-222 to 75-250 and the requirements, rules and regulations of the State Railway Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied."

Section 75-225, R. R. S. 1943, provides that an examiner is authorized to hold hearings, administer oaths, and make recommendations.

The examiner reported to the commission that, in his opinion, the applicant was fit, willing, and able to properly perform the proposed service. He further reported that the applicant had failed to prove that a present or future public need exists for the proposed service and recommended that the application be denied. This recommendation was based on his finding that neither the present nor future public convenience and necessity required the service. Applicant filed exceptions to the examiner's report specifically directed to the finding as to public convenience and necessity, and asked that the examiner's report be overruled and that the application be granted.

The commission considered the matter and held: "The conclusions of the Commission differ from those of the Examiner in his report and recommendation. It is the opinion of the Commission that the evidence adduced at the hearing on the subject application substantiates a finding that the services of presently authorized oil field equipment carriers are not adequate to fulfill the

transportation requirements of an expanding oil and gas industry in Nebraska. The Commission is of the opinion that the present and future public convenience and necessity require the service proposed by the instant application."

The commission then found that the present and future public convenience and necessity required the proposed service and that the applicant was fit, willing, and able properly to perform the proposed service. It ordered the issuance of the certificate.

Motions for reconsideration were filed by protestants and overruled.

The commission findings as to both the fit, willing, and able qualifications of the applicant, and as to public convenience and necessity, are challenged here.

Both findings of the commission are substantially in the language of the statute.

In In re Application of Hergott, 145 Neb. 100, 15 N. W. 2d 418, we held that the failure of the commission to find a willful failure to comply with the provisions of the act rendered the order irregular and void. The order involved was set aside. The requirement of "willful failure" was specified in the act (now section 75-238, R. R. S. 1943).

We are now asked to extend the effect of that decision so as to require a finding of basic facts in the order as a foundation for the finding of the ultimate fact required by the statute. Because of the absence of a finding of basic facts we are urged to hold the commission's order to be void.

The contentions of the protestants in that regard are best set out in Saginaw Broadcasting Co. v. Federal Communications Comm., 96 F. 2d 554.

There the court held: "In discussing the necessary content of findings of fact, it will be helpful to spell out the process which a commission properly follows in reaching a decision. The process necessarily includes at least four parts: (1) evidence must be taken and

weighed, both as to its accuracy and credibility; (2) from attentive consideration of this evidence a determination of facts of a basic or underlying nature must be reached; (3) from these basic facts the ultimate facts, usually in the language of the statute, are to be inferred, or not, as the case may be; (4) from this finding the decision will follow by the application of the statutory criterion."

The court then held: "* * * findings of fact, to be sufficient to support an order, must include what have been above described as the basic facts, from which the ultimate facts in the terms of the statutory criterion are inferred."

The court in reaching this conclusion relied on a number of decisions of the United States Courts which are discussed somewhat at length in the opinion. The court also referred to "decisions of state courts" which supported its conclusion. The decision cited and quoted from is Kewanee & Galva Ry. Co. v. Illinois Commerce Comm., 340 Ill. 266, 172 N. E. 706.

However, in the recent case of Antioch Milling Co. v. Public Service Co., 4 Ill. 2d 200, 123 N. E. 2d 302, the Supreme Court of Illinois held that the decision above cited was "based on an express statutory command" and refused to set aside an order where specific findings of fact were not made, there being no statute requiring such findings.

We find no statute in Nebraska that makes such a requirement as protestants urge upon us. Protestants cite none. In 146 A. L. R. 209 and following, is a note which indicates something of the confusion of issues that would follow the adoption of such a rule.

In Saginaw Broadcasting Co. v. Federal Communications Comm., *supra,* the court held: "When a decision is accompanied by findings of fact, the reviewing court can decide whether the decision reached by the court or commission follows as a matter of law from the facts stated as its basis, and also whether the facts so stated have any substantial support in the evidence. In the

absence of findings of fact the reviewing tribunal can determine neither of these things. * * * a reviewing court cannot properly exercise its function upon findings of ultimate fact alone, but must require also findings of the basic facts which represent the determination of the administrative body as to the meaning of the evidence, and from which the ultimate facts flow."

We have found no such difficulty in our review of the records on appeal from the commission. We decline to undertake to place such a requirement on the commission.

Protestants assign error in the finding of the commission that applicant was fit, willing, and able to perform the service in that it was made "without knowing who owned or controlled said applicant corporation." This information was not furnished by applicant in the authorized form provided by the commission. The application did have attached to it a certified copy of its articles of incorporation. The articles recite the authorized capital stock of the corporation, the amount of the capital stock with which it shall commence business, and that its president had subscribed for 2,248 shares and named the other two incorporators as shareholders, each of whom had subscribed for one share of stock. The sufficiency of the application was not challenged by protestants in their pleadings.

Applicant's president testified that he held all but two shares of the outstanding stock; that the stockholders and directors had not changed since the organization of the corporation; that he was then negotiating a sale of a minority of the stock; and that if the sale were completed the directors and officers of the corporation would not be changed. This testimony stands unchallenged. The assignment is without merit.

This brings us to protestants' assignments of error directed to the sufficiency of the evidence to sustain the commission's order. The rule is: "Courts are without authority to interfere with the findings and orders of the

Nebraska State Railway Commission except where it exceeds its jurisdiction or acts arbitrarily." Johnson v. Peake, 163 Neb. 18, 77 N. W. 2d 670.

The challenge is directed to three alleged insufficiencies of the evidence: (1) That there was no showing that the proposed service of applicant would serve a useful purpose responsive to a public demand or need; (2) that the applicant failed to prove that the alleged need could not be served as well by existing carriers; and (3) that no consideration was given to the effect of the grant of the application upon the services of existing carriers.

We state the evidence which was before the commission, and consider and determine each of these matters.

The certificate granted the applicant involves the movement of heavy commodities and equipment used in the oil industry, and particularly that of drilling and production. Some of the commodities so involved can be moved by standard light and heavy duty equipment. Other commodities require specially built equipment designed to move large and quite heavy articles. It involves also the movement of oil drilling rigs and accessory supplies and articles. The movement of an oil rig from one location to another does not involve merely the loading, hauling, and unloading of the heavy equipment. It seems that the carrier is expected to supply and does supply personnel and some of the machinery on trucks that is used in tearing down, loading, and re-erecting a rig at a new location. It is a specialized service requiring expensive equipment and trained personnel. It not only involves trained employees, but employees that are reasonably compatible and able to work with shipper employees. It is a type of common carrier service that requires prompt service to the shipper. Because of the fact that a drilling contractor never is certain when he may strike oil or a dry well, he accordingly is often unable to determine in advance the exact time when shipper service will be required. Likewise, due

to meeting lease requirements as to starting of drilling time, contractors are often required to dismantle, move, and set up rigs in a quite expeditious time. Delays in any event are expensive. The evidence is that it costs a drill operator from $600 to $1,000 a day for the time a rig is not in operation while moving from location to location. The evidence also is that from 12 to as high as 20 of these trucks of all descriptions are necessary to expeditiously move a big rig at one time.

Several of the major oil companies are now operating in the Cheyenne, Kimball, and Banner County area. The oil production is an expanding business in those counties. Applicant's evidence is that several of these companies had requested that it secure a certificate so that it could serve them in Nebraska as it had in other states.

The applicant is a New Mexico corporation. It holds interstate authority in eight states. It maintains a terminal at Fort Morgan, Colorado. It proposes to locate a terminal at Kimball, Nebraska, and has new and proper equipment available for Nebraska use. There is no question about the ability of applicant to serve the Nebraska shippers based on financial worth, equipment, and trained employees. Several shippers testified to satisfactory service that they have had from applicant in other states and as to their desire that it be granted a Nebraska certificate.

Three of the protestants offered testimony in opposition to the granting of the certificate.

Joy has headquarters at Falls City in southeastern Nebraska. He has four regular employees and four trailers which he owns. He testified that he had on lease six other tractors and trailers but that he had never seen them. He testified that during the hearing he had verbally leased a terminal at Kimball but had never seen the leased property. It is obvious that he cannot furnish the specialized extensive equipment service which shippers have a right to expect.

Whitlock maintains a terminal at Sterling, Colorado.

He has rendered satisfactory carrier service in Nebraska. His witness frankly stated that there is not enough business in Nebraska to justify the expense of establishing a terminal in this state. Sterling is over 30 miles from Sidney and 85 miles from Kimball, Nebraska. Obviously he does not presently propose to put himself in a position to render the full, prompt, and efficient service that the shippers require. He brings his own situation fairly within the scope of our holding in Dalton v. Kinney, 160 Neb. 516, 70 N. W. 2d 464.

The other and principal protestant is Rogers. The testimony shows that he has his headquarters and terminal at Sidney with yards at Kimball and Harrisburg. It appears that Rogers has the equipment, the resources, the experience, and trained employees required to move the large rigs in a satisfactory manner. Rogers' testimony is that in slack periods as much as 40 percent of his equipment is idle and that in peak periods sometimes 10 to 15 percent of his equipment is idle.

Shippers testified as to extensive, expensive delays in Rogers' service caused by the fact that the required equipment was in use for others. Rogers' evidence is that he is giving adequate service from his standpoint. It is obvious that he is not fully rendering the prompt efficient service that the industry requires. Rogers does not indicate a willingness to increase his equipment to the place where he can give the requisite prompt service that peak-load demand requires.

Shippers testified that the volume of business in the industry and its demands were such that more than one fully adequate carrier in the field was a necessity. One shipper went to the extent of saying that his company might find it necessary to purchase equipment for its own needs unless additional common carrier service were made available.

This evidence develops another situation. It appears that the commission fixes the rates for the service here involved, but that it is done on a credit basis by the

carrier. Both Whitlock and Rogers testified that they have found it necessary to establish the credit ratings of prospective shippers and that they deny common carrier service to shippers whose credit ratings are not satisfactory to them. There is evidence that Whitlock had advised one shipper that it would not serve him. Whether this was because of a credit or a personal problem is not at all certain.

There is also evidence that Rogers had denied common carrier service to one shipper. It appears that the dispute arose over what was a proper charge. Rogers stated there was a long delay in receiving payment of a large account. Whatever the cause, that shipper has been denied common carrier service by Rogers.

By statute a common carrier is defined as: "* * * any person who or which undertakes to transport passengers or property for the general public in intrastate commerce by motor vehicle for hire, whether over regular or irregular routes, upon the highways of this state; * * *." § 75-223, R. S. Supp., 1955.

We have held: "* * * at common law, so far as its vocation is concerned, a common carrier is one which holds itself out to the public as a carrier always open to employment for the transportation of persons or freight, and that it will carry for all persons indiscriminately." State ex rel. Winnett v. Union Stock Yards Co., 81 Neb. 67, 115 N. W. 627. See, 13 C. J. S., Carriers, § 3, p. 25; 9 Am. Jur., Carriers, § 4, p. 430.

Carriage for all persons indiscriminately is implicit in the statutory definition of a common carrier.

We recognize the rule stated in State ex rel. Board of R. R. Comrs. v. Lischer Bros., 223 Iowa 588, 272 N. W. 604, that: "* * * a common carrier does not cease to be such by refusing to carry for shippers whose ability to pay is doubtful." That issue is not here.

The commission was confronted with a situation where the certified carrier or carriers were electing to set up their own standard as to whom they would serve and

whom they would not serve. It is apparent that indiscriminate service to all persons was not available. This situation bears directly on the question of public convenience and necessity. The protestants rely on our holding in In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507, and Edgar v. Wheeler Transport Service, Inc., 157 Neb. 1, 58 N. W. 2d 496. In those cases we found that the record did not sustain a finding that the present and future public convenience and necessity demanded the service of an additional carrier in the field. Here the record sustains such a finding by the commission.

That finding is within the jurisdiction of the commission's power and duty. It made the finding. The record sustains it. It is not for us to set it aside.

Finally, protestants contend that the order of the commission must be set aside for failure to give consideration to the effect of the grant of the application upon the service of existing carriers. Such consideration is inherent in the order of the commission. Obviously the grant of the certificate to the applicant and its entry into competitive service might well be determined by the commission to be the cause of protestants improving a service which the commission could find from the evidence was not entirely satisfactory.

The declared policy of section 75-222, R. R. S. 1943, is, in part, to regulate transportation "in the public interest," and to promote "efficient service" without "undue preferences or advantages, and unfair or destructive competitive practices." The declared policy does not condemn competition. It does condemn "unfair or destructive competitive practices."

As we read this record the decision of the commission is reasonably reconcilable with the declared legislative policy of this state.

Protestants' contention resolves itself down to the position that they are entitled to have and maintain a monopoly to render the service here involved. On the

showing here, it is that Rogers is entitled to that monopoly. Heretofore we observed that Whitlock had brought itself fairly within the scope of our decision in Dalton v. Kinney, *supra*. Rogers, also, due to its policy of selectivity of shippers and no declared willingness either to improve its service or fully and promptly meet the service required in this industry, placed itself where the commission could have found that it also was within the scope of Dalton v. Kinney so as to justify the issuance of a certificate to applicant. We concluded the opinion in Dalton v. Kinney with this holding: "We also held in In re Application of Richling, 154 Neb. 108, 47 N. W. 2d 413: 'Furthermore, the statute requires that the finding that applicant is fit, willing, and able to perform the proposed service, and that such service is or will be required by the present or future public convenience and necessity, must be sustained by evidence showing that the granting of the certificate was not arbitrary or unreasonable.' The evidence here meets that test."

The holding is applicable here.

Protestants rely on our decision in In re Application of Effenberger, 150 Neb. 13, 33 N. W. 2d 296. Material distinctions exist in that case from the instant one. There the commission was considering an application for a certificate to permit a carrier to enter into a competitive common carrier status in the carrying of passengers over fixed routes on regular schedules. There inheres in such service certain monopolistic characteristics that are generally recognized in the regulation of such public utilities. That element does not exist to that extent in the regulation of common carriers such as are here involved.

There as here we followed the rule that the determination of the issues presented rests with the railway commission and that "its findings and orders will not be interfered with on appeal if any reasonable basis exists

upon which they can be supported." In re Application of Effenberger, *supra*.

There as here we were reviewing a determination of the commission to grant an application. The last two paragraphs of our opinion in the Effenberger case are quite applicable here and with this quote we conclude this opinion: "This court has no power to regulate public utilities. Its function on appeal is limited to an examination of the jurisdiction of the railway commission over the subject matter and a determination of whether or not the order made by the railway commission is reasonable as distinguished from arbitrary action. The policy or wisdom of its action cannot be reviewed by the courts where the foregoing requirements to lawful action are found to exist.

"We are of the opinion that the action of the railway commission in the present case has evidentiary support in the record and constitutes a proper exercise of the powers vested in the railway commission by the Constitution and laws of this state. Under such circumstances this court is without authority to interfere with the result."

AFFIRMED.