In re Application of Wallace C. Walker, doing business as Modern Body Shop, Scottsbluff, Nebraska. Wallace C. Walker, doing business as Modern Body Shop, appellee, v. Morgan Drive Away, Inc., appellant.

95 N. W. 2d 564

Filed March 20, 1959. No. 34496.

Story, Pilcher & Howard, for appellant.

Richard S. Wiles, Harrison F. Russell, Holtorf & Hansen, and Charles F. Fitzke, for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an appeal from an order of the Nebraska State Railway Commission granting a certificate of public convenience and necessity to Wallace C. Walker, doing business as Modern Body Shop.

The intervener protestant, and appellant here, is Morgan Drive Away, Inc., of Elkhart, Indiana. The above entities will be referred to herein as the commission, Walker, and Morgan.

Walker's application for a certificate was filed on June 1, 1956. It was granted September 18, 1956. Morgan moved for rehearing on the ground that it was entitled to and had received no notice of the application. The commission considered that matter and, on September 23, 1957, sustained Morgan's objections and set the matter for rehearing. During this period Walker was operating under his certificate. Evidence as to those operations during that period was offered at the rehearing. Its admission by the commission is assigned here as error. We consider and determine that issue adverse to Morgan.

On May 28, 1958, the commission granted a certificate. Morgan moved for rehearing. The motion was overruled on June 20, 1958. Morgan appealed to this court from that order. Certified copy of the notice of appeal was filed here on July 3, 1958.

On June 30, 1958, application was filed with the commission to transfer the certificate to a partnership signed jointly by the partnership and Walker. Notice of hearing on this application was sent out by the commission on July 9, 1958. On July 15, 1958, the commission entered an order issued against Walker to show cause why the certificate should not be revoked. On September 17, 1958, the commission sustained the order to show cause and cancelled the certificate of Walker. On the same day it granted a certificate to the partnership.

Walker contends here that the issue involved in this

appeal is now moot as a result of the cancellation of his certificate. We do not deem it necessary to decide that question. We consider the issues presented otherwise and affirm the order of the commission.

The certificate of public convenience and necessity provided:

"A. SERVICE AND ROUTE OR TERRITORY AUTHORIZED: Wrecked or disabled motor vehicles by winch or tow truck between points and places within a 40-mile radius of Scottsbluff, Nebraska, and, between points and places within said radial area on the one hand, and, on the other hand, points and places in the State of Nebraska, over irregular routes.

"B. SERVICE AND ROUTE OR TERRITORY AUTHORIZED: New and used house trailers by winch or tow truck between points and places in the State of Nebraska, over irregular routes.

"RESTRICTION: Terminals shall not be established and or motor vehicle equipment stationed in any place other than Scottsbluff, Nebraska."

Morgan challenges here that part of the certificate that relates to "new and used house trailers by winch or tow truck between points and places in the State of Nebraska, over irregular routes."

It is a matter of common knowledge that the panhandle area of Nebraska is roughly 400 miles or more from the heavily populated industrial areas of the eastern part of the state. The evidence is that Scottsbluff, in the panhandle, is 450 miles from the metropolitan city of Omaha. In that area there has been in the last half century extensive irrigation development, and improvement of dry land farming methods; the livestock industry in the ranch areas has grown; and considerable oil production has developed. As a result of these things there has been a large industrial development and population growth in that part of Nebraska. This geographical situation presents problems of common carrier service to the commission that might not arise were it not

for the intervening distances between the two parts of the state.

The evidence here is that there are between 3,000 to 5,000 mobile homes in the panhandle area. They are used extensively by employees in the oil industry. That segment of owners are so employed that when need arises they require prompt, efficient, and economical service. Other homes are often moved from parking area to parking area, and in, to, and from that section of the state. All desire prompt, efficient, and economical service when the time to move occurs. This sort of towing also has its seasonal aspects.

Movements of trailers are described as initial and secondary. The initial movements are those from point of manufacture to point of destination. All other movements are secondary movements.

There are mobile home businesses conducted at Alliance, Kimball, and Scottsbluff. They desire and use initial and secondary movements. Home owners repeatedly contact them for common carrier service in secondary movements. Insurance company representatives need and use secondary movement service in hauling mobile homes to a place for repair or estimate of damages.

Walker produced evidence that these people need and desire common carrier service with a terminal in that area. The witnesses generally testified that the need is one of quick service; and service where they can, by direct contact with a carrier, make all needed arrangements.

The weather also enters into consideration. Road conditions delay movements. Western Nebraska has its own adverse weather problems, separate and distinct at times, from those of eastern Nebraska.

We refer later herein to Morgan's system of handling this business. We point out now that generally tractors for movements of this kind in western Nebraska are dispatched from Omaha. If eastern Nebraska is

subject to adverse weather conditions and western Nebraska is not, service could be delayed under circumstances that would not delay a western Nebraska based carrier.

Western Nebraska users of this type of carrier service point out also that there is on occasion damage to homes in transit, and that those claims can more easily be adjusted with a carrier based in western Nebraska.

The commission had full authority to weigh all these factors in exercising its judgment in the matter.

Walker operated a body repair shop. He had three employees and one truck equipped to tow trailers.

Walker testified that he had towed trailers beginning on September 18, 1956. He was then asked to describe the territory of his operations. Morgan objected on various grounds, finally stating that it wanted "copies of his billings, point of origin to point of destination, the commodity hauled, and the tariff charged."

Walker testified that his records were in the hands of an auditor for income tax purposes. After prolonged objection, it was agreed that he would furnish the information to the commission after the hearing was closed before the examiner.

Walker then filed copies of 18 statements of account rendered to customers, each giving the exact information which Morgan stated it wanted, plus the name of the party served. This is referred to as "Late filed Exhibit 6." As we see it, Morgan got exactly what it asked for and is in no position to complain. It first uses the exhibit here as a ground of impeachment of testimony of Walker's witnesses. Having done so, it then argues error in the admission of the evidence.

Neither party here undertakes to advise us as to the power of this court to review rulings on evidence made by the commission. We do not determine the assignment on that basis, but rather on the fact that, putting "Late filed Exhibit 6" aside, there is ample evidence in this record to sustain the order of the commission.

Walker testified, over objection of Morgan, that he had requests for towing of trailers two or three times a week; that they involved secondary hauls out of the state, but most of the requests were for intrastate hauls within a radius of 80 miles of Scottsbluff; and that between September 18, 1956, and September 23, 1957, he towed approximately one mobile home a week.

Morgan argues here that the commission had no authority to consider this hauling during the period Walker held the certificate that was later cancelled. Here again we do not determine our power to review rulings of the commission and, assuming that the commission considered this evidence, it is patent that it had a right to do so. The evidence went not to the question of the legality of the hauls, but to the fact of the hauls as it related to the issue of public convenience and necessity. See, Crichton v. United States, 56 F. Supp. 876; St. Johnsbury Trucking Co. v. United States, 99 F. Supp. 977.

The evidence is that there was no other common carrier in the Scottsbluff area authorized to perform the service here involved. There is evidence that there was one such certificate holder at Sidney.

Morgan has a terminal at Loveland, Colorado. The evidence is, however, that tractors assigned to that terminal have no Nebraska intrastate authority. Morgan has its principal Nebraska terminal at Omaha, and another at Falls City, from which points apparently it operates both intrastate and interstate. Morgan also has one tractor stationed at Grand Island, where it has a driver-agent. This one tractor terminal is maintained at Grand Island either exclusively or primarily for initial haul service originating at a factory at Grand Island. Morgan offered testimony that it was not economically justifiable to station more equipment at Grand Island and that it had no intention of doing so under existing conditions. Neither did it have any intention of establishing an "office" at Scottsbluff.

Morgan's method of handling business originating in the panhandle area is generally as follows: Prospective shippers could telephone collect to Loveland, in which event the call would be relayed to the Omaha terminal, or they could telephone collect to Omaha and place the order. Morgan would then dispatch a tractor to western Nebraska from Omaha to perform the service. The normal time involved from the call to delivery of a tractor at point of service was at least 22 hours. To this there are two exceptions:

If Morgan had a tractor making a delivery in western Nebraska, the driver before returning to Omaha was expected to call the Omaha terminal. If there were then business that the tractor had license authority to handle, it would be directed to perform the service. That might shorten the elapsed time between the call and the service. The evidence contains no indication as to the extent of the expedited service thus furnished.

The other exception is that, if weather or other unusual conditions existed, the dispatch of a carrier to perform the service might be delayed. Just how often this occurred does not appear.

The commission then had to decide whether to issue a certificate to a person ready, willing, and able to serve with a terminal at Scottsbluff in the area where the service was required, or to deny the certificate and compel shippers to accept the service which Morgan deems adequate. It decided to authorize the service requested by Walker. It had full authority to do so.

Morgan relies on our decisions antedating Dalton v. Kinney, 160 Neb. 516, 70 N. W. 2d 464. The fact situation there presented was similar to the problem here. We there reviewed the statutory authority of the commission and some of our decisions. We held: "In this instance there appears no order of the commission requiring the existing carriers to provide adequate service. Such an order was not required for here the certified carriers able to render adequate service clearly

indicated an unwillingness to furnish the required service except under conditions as to time of service, cost, and adequacy which the carriers desired to control or unless otherwise they could find assurance of profitable operations. The commission accepted the alternative and issued a certificate to an applicant found, and shown without dispute, to be fit, willing, and able properly to perform the service required by the shipping public. Its decision in this regard cannot be held to be unreasonable or arbitrary."

We followed that decision in Houk v. Peake, 162 Neb. 717, 77 N. W. 2d 310; in Johnson v. Peake, 163 Neb. 18, 77 N. W. 2d 670; and in Ferguson Trucking Co., Inc. v. Rogers Truck Line, 164 Neb. 85, 81 N. W. 2d 915. We adhere to that decision.

We restate the holding: "Courts are without authority to interfere with the findings and orders of the Nebraska State Railway Commission except where it exceeds its jurisdiction or acts arbitrarily." Dalton v. Kinney, *supra*.

Morgan assigns as error the granting of authority to Walker to transport house trailers in initial movements and in granting state-wide authority. Morgan gives brief attention to these assignments in its argument. Error is not demonstrated.

The order of the commission is affirmed.

AFFIRMED.

MESSMORE, J., participating on briefs.