In re Application of Denver Chicago Transport Co.,
Inc., of Nebraska.
Denver Chicago Transport Co., Inc., appellee, v. Ora
E. Poulson, doing business as O. E. Poulson,
Elm Creek, Nebraska, appellant.
112 N. W. 2d 410
Filed December 8, 1961. No. 35026.

*Nelson, Harding & Acklie,* for appellant.

*Viren & Emmert, C. J. Burrill,* and *K. E. Wolcott,* for
appellee.

Heard before Simmons, C. J., Carter, Messmore,
Yeager, Spencer, Boslaugh, and Brower, JJ.

BOSLAUGH, J.

This is an appeal from the Nebraska State Railway Commission in proceedings upon the amended application of Denver Chicago Transport Co., Inc., of Nebraska, for authority to transport molasses as a common carrier over irregular routes in Nebraska on and west of U. S. Highway No. 183. A protest to the granting of the application was filed by Ora E. Poulson who has authority to provide such service.

A hearing upon the application was held before an examiner. The examiner in effect held that the protestant could not furnish adequate service at that time and recommended that the protestant be given approximately 30 days in which to make a showing that he could furnish adequate service. The final determination with respect to the application was then to be made after the further showing of the protestant.

Exceptions were filed to the report of the examiner by the applicant. After a hearing before the commission on the exceptions, the commission entered an order sustaining the exceptions and granting the authority requested in the amended application. The protestant then filed a motion for rehearing and reconsideration. After a hearing on the motion the commission entered an order on August 17, 1960, overruling it. A copy of this order was mailed to the applicant on August 24, 1960, but a copy was not mailed to the protestant or his attorney until January 13, 1961. The protestant then appealed to this court.

After the appeal had been filed in this court the applicant filed a motion to dismiss the appeal upon the ground that it had not been perfected within 1 month from the date of the entry of the order as required by section 75-405, R. R. S. 1943.

Where a motion for rehearing is filed, the time for appeal runs from the date of the ruling on the motion. § 75-406, R. R. S. 1943. Section 84-915, R. S. Supp., 1959, which became effective September 28, 1959, pro-

vides in part: "Parties to the proceeding shall be notified of the decision and order in person or by mail." The record fails to show that any notice of the ruling on the motion for rehearing was given to the protestant or his attorney until January 13, 1961.

The question presented is whether the time for appeal begins to run before the commission has notified the parties of its decision and order as required by the statute. We hold that it does not. In a similar situation (prior to the 1948 amendment of the rule) the Supreme Court of the United States suggested that where the clerk failed to notify the parties of the entry of judgment as required by Rule 77 (d) of the Rules of Civil Procedure, the time for appeal did not commence to run. In Hill v. Hawes, 320 U. S. 520, 64 S. Ct. 334, 88 L. Ed. 283, 149 A. L. R. 736, the court said: "It is true that Rule 77 (d) does not purport to attach any consequence to the failure of the clerk to give the prescribed notice; but we can think of no reason for requiring the notice if counsel in the cause are not entitled to rely upon the requirement that it be given. It may well be that the effect to be given to the rule is that, although the judgment is final for other purposes, it does not become final for the purpose of starting the running of the period for appeal until notice is sent in accordance with the rule."

The appeal in this case was perfected within 1 month from the date of the notice to the protestant of the ruling of the commission upon the motion for rehearing. This was sufficient to confer jurisdiction upon this court. For this reason the motion to dismiss was and is overruled.

The commission found that the applicant was fit, willing, and able to perform the service proposed and that the present and future public convenience and necessity required that the proposed service be authorized. The dispute here concerns the finding in regard to public convenience and necessity. The as-

signments of error are, in substance, that the order of the commission is contrary to the evidence and the law.

On an appeal to this court from an order of the commission in proceedings upon an application for a certificate of public convenience and necessity, the only questions to be determined are whether the commission acted within the scope of its authority and whether the order complained of is reasonable and not arbitrarily made. Courts are without authority to interfere with the findings and orders of the railway commission except where it exceeds its jurisdiction or acts arbitrarily. Preisendorf Transp., Inc. v. Herman Bros., Inc., 169 Neb. 693, 100 N. W. 2d 865.

The evidence shows that the Industrial Molasses Corporation operates a molasses storage terminal at Gering, Nebraska. Molasses is shipped to the storage terminal or facility at Gering by rail. From Gering the molasses is delivered by truck to feed mills and feed lots located generally within a radius of from 100 to 150 miles of Gering. Prompt service is important to the shipper. Orders for immediate delivery require that equipment be made available upon short notice.

In the first 3 months of 1959 over 700 tons of molasses were shipped from Gering, Nebraska, by truck to Nebraska destinations. The total tonnage to be shipped into this area from Gering in 1959 was estimated to be 3,000 tons. During the preceding year about 500 tons had been shipped into this area by the predecesssor to the Industrial Molasses Corporation.

The molasses in question is used for animal feeds and must be free of all contamination and fit for consumption by animals at the time that it is delivered. For that reason, equipment that has been used to haul leaded gasoline is not considered suitable for hauling molasses. Tank trucks which haul molasses must be equipped with pumping facilities that will handle mo-

lasses and connect with the receiving facilities of the feed lots and mills.

The applicant and its parent company, a Colorado corporation, share a terminal at Gering, Nebraska. The applicant has interstate authority for the transportation of molasses and furnishes that service to the Industrial Molasses Corporation from the Gering terminal.

The protestant has authority to transport molasses in Nebraska from all points of origin, except Crete and Nebraska City, to all points and places in Nebraska over irregular routes. The headquarters of the protestant, and its only terminal, are located at Elm Creek, Nebraska. Elm Creek is approximately 250 miles from Scottsbluff.

Common carriage transportation is but a small part of the business of the protestant. The protestant farms approximately 2,200 acres of land in Dawson County, Nebraska, with hired labor and runs between 600 and 1,200 head of cattle the year around. The protestant also operates an oil bulk plant, three service stations, and an oil-jobbing business. The gross sales of the protestant from the petroleum-jobbing business were $350,000 in 1958. The gross revenue from common carriage of petroleum products in Nebraska was around $1,700 for that year. The revenue from common carriage transportation was described as an "infinitesimal" part of the protestant's gross income.

The protestant has only one permanent driver but keeps an active file on up to as many as three or four drivers who are subject to call.

The protestant submitted a list of equipment which included three trailers, one of which was described as a molasses trailer. This trailer, which was not equipped with a pump, had been used to haul petroleum products including leaded gasoline. A second trailer was used entirely for hauling gasoline. The third trailer had been used for the storage of asphalt since 1958.

The manager of the protestant estimated that it could

provide service to move a shipment of molasses from Gering, Nebraska, within 12 hours if requested to do so. This witness admitted that he did not know for sure where the equipment to move such a shipment would come from.

The evidence in this case established that the protestant was not equipped or situated so that it could provide adequate service to the Industrial Molasses Corporation or other shippers in the Gering area. This is in effect what the examiner found.

There was also evidence that the protestant had solicited business from the Industrial Molasses Corporation but had never been tendered a shipment of molasses; that the protestant had contacted other carriers and could obtain the equipment necessary to haul molasses; and that the protestant would establish terminal facilities at Gering if business was tendered to it. The most that can be said of this evidence is that it tended to show that the protestant was willing and able to obtain additional equipment and facilities so as to be able to provide adequate service in the Gering area if it could be assured that it would receive the business.

The commission was justified in concluding that the service available from the common carriers who were authorized was not adequate and that additional authority should be granted. See Johnson v. Peake, 163 Neb. 18, 77 N. W. 2d 670. Thus, the evidence is sufficient to sustain the finding of the commission that the present and future public convenience and necessity requires that the proposed service be authorized.

The protestant relies upon In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507, and Edgar v. Wheeler Transport Service, Inc., 157 Neb. 1, 58 N. W. 2d 496, as supporting his contention that the finding of the commission in this case in regard to public convenience and necessity is not supported by the evidence. The cases cited by the protestant involved factual situations which were different from the factual situation in this case.

In both the Canada case and the Edgar case a large number of carriers had been granted authority to perform the service for which the applicants sought authority. In this case there is no evidence concerning any competing carrier other than the protestant. A formal protest to the original application was filed by another carrier, but this carrier made no further appearance in the case and is not mentioned in the evidence.

In Young v. Morgan Drive Away, Inc., 171 Neb. 784, 107 N. W. 2d 752, this court interpreted and clarified its holding in the Canada case. In the Young case the court pointed out that the conclusion reached in the Canada case has very limited application to situations involving irregular route authority. In the Young case the court further stated that it is not the intent and purpose of the Motor Carrier Act that once irregular route authority has been granted on a statewide basis to a carrier able and willing to satisfactorily serve the entire state that the commission shall have no right to grant additional authority to other carriers.

The Motor Carrier Act does not condemn competition. It does condemn unfair or destructive competitive practices. The primary object of the regulation of public utilities by the Nebraska State Railway Commission is not to establish a monopoly or to guarantee the security of investment in public service corporations, but, first and at all times, to serve the interests of the public. Young v. Morgan Drive Away, Inc., supra.

In Basin Truck Co. v. R. B. "Dick" Wilson, Inc., 166 Neb. 665, 90 N. W. 2d 268, this court said: "In determining the issue of public convenience and necessity, the controlling questions are whether or not the proposed operation will serve a useful purpose responsive to a present or future public need, whether or not this purpose can or will be served as well by existing common carriers, and whether or not it can be provided by the applicant in the manner specified without endan-

gering or impairing the operations of existing common carriers contrary to the public interest. The primary purpose of commission control is to secure adequate sustained service for the public at a minimum cost and to protect and conserve investments already made for such purpose, and, in doing so, primary concern is that of the public rather than that of individuals. Houk v. Peake, supra. * * * It is not the purpose of commission control to establish an unbridled monopoly by the elimination of fair competition, nor is it intended to create unfair or destructive competition resulting in inadequate service to the public. It is a regulated competition, productive of efficient service at a minimum cost, operated for reasonable profit in the interest of public users of the service, without endangering or impairing the operations of certified common carriers in the field, that meets the objectives of commission control." See, also, Dalton v. Kinney, 160 Neb. 516, 70 N. W. 2d 464; Ferguson Trucking Co., Inc. v. Rogers Truck Line, 164 Neb. 85, 81 N. W. 2d 915.

The order of the commission in this case is not unreasonable or arbitrary and is affirmed.

AFFIRMED.