IN RE APPLICATION OF MIDWEST MAIL SERVICE, INC. MIDWEST MAIL SERVICE, INC., APPELLEE, v. BANKERS DISPATCH CORPORATION, APPELLANT.

119 N. W. 2d 692

Filed February 15, 1963. No. 35294.

810

Robert E. Powell, for appellant.

Viren & Emmert, C. J. Burrill, and K. Edward Wolcott, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an appeal from an order of the Nebraska State Railway Commission authorizing Midwest Mail Service, Inc., Omaha, Nebraska, to engage in operation as a contract carrier by motor vehicle to transport "U. S. Mail, U. S. Parcel Post, non-negotiable instruments, documents, commercial papers, cash letters, deposit slips, checks accounting, tabulating and computing machine forms, records, and housing units containing such forms or records, loose, or in parcels, packages, and other containers, for the accounts of banks, banking institutions, savings and loan associations wholesale and retail establishments, under individual bilateral contracts, in writing between applicant and subscribers to its specialized expedited messenger service, on an 'exclusive-use-of-vehicle' basis, and/or regular, irregular scheduled or nonscheduled basis to, from and/or between points and places in the State of Nebraska. RESTRICTION: Service herein proposed will be limited to articles, parcels or packages above described, and incidental to or used in

connection with personalized and expedited accounting services, none of which exceed 100 pounds in weight."

Many common carrier objectors entered their appearances in opposition to the grant of the permit. All except Bankers Dispatch Corporation withdrew their objections when the restriction limiting the application was agreed to by the applicant. The Bankers Dispatch Corporation resisted the grant of a permit by the commission and, when the application was granted, appealed to this court. It is the contention of Bankers Dispatch Corporation that the order of the commission granting the application is not supported by evidence and is therefore unreasonable and arbitrary.

The applicant, whom we shall refer to as Midwest, was organized in June 1961. It engaged in handling mail for the convenience of its customers. It also engaged in the delivery of packages and parcels to bus stations and airlines and the transfer of interoffice and interplant merchandise and packages. This operation was within the city of Omaha or within a radius of 5 miles beyond its corporate limits. This was properly done without authority of the commission, which has no jurisdiction within such area. § 75-224, R. R. S. 1943.

The purpose of the application in the present case is to obtain a contract-carrier permit to transport the articles designated in the granted permit to and from all points in Nebraska over regular and irregular routes. A contract carrier by motor carrier has been generally defined by this court as one who furnishes transportation service to meet the special needs of specified shippers, which cannot be adequately provided by common carriers. It is the duty of the commission to weigh the special needs of shippers desiring contract carrier service against the adequacy of the existing common carrier service. The effect on a protesting carrier of a grant of the application and the effect on shippers of a denial are factors to be weighed in determining if the grant of the application would be consistent with the public in-

terest. Hagen Truck Lines, Inc. v. Ross, *ante* p. 646, 119 N. W. 2d 76. See, also, Rodgers v. Nebraska State Railway Commission, 134 Neb. 832, 279 N. W. 800.

There is no evidence in the record on the part of any shipper or prospective shipper of any need for a specialized service. There is no evidence by any shipper that he will contract with the applicant if the permit is granted. There is no evidence by any such shipper that existing common carrier service is inadequate to provide the service it needs. The applicant relies upon two witnesses to establish the need for specialized service. We shall briefly review their testimony.

Claude J. Ford is a vice president of Systemation Incorporated, which was organized in May 1961 with its principal place of business in Omaha. The business was established for the purpose of engaging in the processing of business source records in which the transportation of basic data and the finished product to and from the customer and the service center is an important consideration from the standpoint of time used and schedules employed. The witness testified that he was interested only in the above factors, regardless of who performed it. He had made no investigation of existing transportation services, although he knew such services existed. At the time he testified he had no customers outside of Omaha. He had no information as to the terms of any contract offered by the applicant and stated that he would not use the proposed service of the applicant unless its contract terms were acceptable. He also stated that, if there was an existing common carrier service in existence, he would be willing to use such service.

Thomas J. Nolan testified that he was a systems specialist engaged in advising his clientele on methods and procedures of handling their particular problems in keeping books, accounts, billings, and other records. This includes consultations regarding the use of modern equipment for processing source data into usable and

functional information in a minimum period of time. The cost of processing source data is prohibitive in most business organizations, which necessitates its transportation to and from processing centers for prompt handling. The service offered by the applicant is the type required to meet the needs of businesses that rely upon these processing centers. The witness testified that he could make no use of applicant's service as he performs his work at the place of business of his client. His testimony is that the processing center is a new development which will in time be of great use to businesses throughout the state. There is little such handling by businesses outstate at the present time and consequently little if any demand for it now exists.

The protestant, whom we shall refer to as Dispatch, holds interstate and intrastate certificates as a common carrier for the transportation of commercial papers, documents, and written instruments as are used in the conduct and operation of banks and banking institutions between all points in Nebraska over irregular routes. It now has authority to transport many of the items listed in the permit granted to the applicant and, when a demand or need for additional service arises, it will seek an extension of its authority in order to provide such service. It had received no requests for specialized service outside the scope of its authority prior to the hearing before the commission. Dispatch operates in several states other than Nebraska. It maintains three vehicles in Nebraska for the handling of its business, two of them stationed in Omaha and one in Lincoln. It secured its certificate and established its business in Nebraska in 1959 when it invested its funds and proceeded to build up its business. It now asserts that, after pioneering the business and building it to a profit-making operation, it would be very detrimental to Dispatch to permit the applicant to enter the field. Dispatch has authority to provide service to and from processing centers for banks and banking institutions any-

where in Nebraska and stands ready to provide such service to others if and when the need arises.

In considering an application for a permit to operate as a contract carrier the burden is upon the applicant to show that the proposed service is specialized and fits the needs of the proposed contracting shippers. Hagen Truck Lines, Inc. v. Ross, *supra*. A contract carrier ordinarily operates to perform specialized service for specified shippers to meet their peculiar needs that cannot be performed by a common carrier.

The evidence fails to show any existing need for the contract carrier service applied for. No shipper, or potential shipper, testified to any need for a specialized service. There is no evidence that the service provided by existing common carriers was in anywise inadequate. The applicant has failed to produce a single shipper, or potential shipper, who would testify that the specialized service applied for is needed and that it will, if the application is granted, contract with the applicant for the carriage of articles designated in its application. The necessary elements to support a contract carrier permit are not supported by evidence.

The fact that the proposed service will be used by a limited class of persons or businesses is not a controlling factor. Many services rendered by common carriers are limited or specialized, depending upon the nature of the industry being served. It seems clear to us that applicant desires authority to transport the designated articles for the general needs of all shippers. These are factors indicating a common carrier service and not that of a contract carrier. Even though applicant purports to transport only a limited number of articles for a limited number of businesses who alone have occasion to transport them, the evidence indicates that applicant intends to hold itself out to perform transportation service for all shippers of articles named in the permit. Such operations are those of a common carrier. State ex rel. Winnett v. Union Stock Yards Co., 81 Neb. 67,

115 N. W. 627; Zajic v. Johnson, 126 Neb. 191, 253 N. W. 77. We conclude that the proposed operation is that of a common carrier and, if authority to perform it is to be authorized, the applicant must show that it is required by public convenience and necessity.

The applicant argues that the grant of a permit to a contract carrier may be based on a future need as well as a present existing need. We quite agree that the commission is not required to wait until a transportation need becomes critical before taking action in the public interest. But such action must be based upon some reasonable evidence that a future need will shortly arise. It cannot be based solely on speculation and conjecture, even though absolute certainty is not required. In Richling v. Transit, Inc., 154 Neb. 108, 47 N. W. 2d 413, we said: "Furthermore, the statute requires that the finding that applicant is fit, willing and able to perform the proposed service, and that such service is or will be required by the present or future public convenience and necessity, must be sustained by evidence showing the granting of the certificate was not arbitrary or unreasonable." In Chicago & N. W. Ry. Co. v. Save the Trains Assn., 167 Neb. 61, 91 N. W. 2d 312, we said: "When the people of this state entrusted the regulation of public utilities to the railway commission, they did not grant it a power that could be whimsically exercised. It was power that was to be exercised with reasonable promptness under law with a due regard to established facts."

We conclude that the grant of the contract carrier permit in the instant case is without support in the evidence. The order of the commission is therefore unreasonable, arbitrary, and of no force and effect.

REVERSED.