IN RE APPLICATION OF NEYLON.
JOHN E. NEYLON, DOING BUSINESS AS NEYLON BROS. FREIGHT LINES, APPELLANT, V. PETERSEN & PETERSEN, INC., ET AL., APPELLEES.
147 N. W. 2d 488
Filed December 22, 1966. No. 36303.

James E. Ryan, Hyman B. Evnen, and Donald L. Stern, for appellant.

Nelson, Harding, Acklie, Leonard & Tate and Viren, Emmert & Epstein, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ., and BOYLES, District Judge.

CARTER, J.

John E. Neylon, doing business as Neylon Bros. Freight Lines, applied to the Nebraska State Railway Commission for a clarification or interpretation of his certificate of public convenience and necessity, or, in the alternative, for an extension of his certificated authority. Protests were filed by some 11 competing motor common carriers operating in Nebraska intrastate commerce. After a hearing, the commission denied the application and Neylon has appealed.

The evidence shows that Neylon purchased the authority in question from Howard Gore in 1952. In the proceeding before the commission for the transfer of Gore's authority to Neylon, the commission retained the language of the Gore certificate in issuing a certificate to Neylon although the examiner had recommended that the area to be served should be more clearly and explicitly stated in the Neylon certificate. Nothing further was done to make Neylon's certificated authority more clear until the Interstate Commerce Commission required a clarification by the state commission in connection with an application by Neylon for an interstate certificate. This forced Neylon to apply for a clarification or interpretation of his certificate which precipitated the issues raised in the instant case.

The certificate involved in this litigation was issued on January 24, 1952. The certificate authorized the transportation of commodities generally, except those requiring special equipment. It authorized irregular route operations between Beatrice and vicinity and to and from 10 named cities and their vicinities, and occasionally to and from various points within the state. It is contended by Neylon that the foregoing certificate was

intended to authorize statewide irregular route authority and his application is to so clarify his certificate by spelling out such authorization.

Neylon testified that he purchased Gore's certificate for the purpose of obtaining statewide irregular route authority and that he informed the commission that he so construed the certificate at the hearing on the application to authorize the transfer of Gore's certificate to him. There is no evidence that the commission in any manner acquiesced in such construction. The protesting carriers assert that Neylon's certificate does not authorize statewide irregular route authority, that such authority has not been exercised by Neylon since he acquired the Gore certificate as he claims, and that no need exists for extending Neylon's irregular route authority as the existing service of other carriers is adequate to perform the service.

On January 24, 1952, the commission issued its order in application No. M-8664, supplement No. 6, by which the certificate of public convenience and necessity held by Howard Gore was transferred to Neylon by the issuance of a new certificate to Neylon. The alleged ambiguity in the Neylon certificate relates to the following language pertaining to irregular route operations: "From Beatrice and vicinity, on the one hand, and, on the other hand, to and from Omaha, Lincoln, Fremont, Fairbury, Falls City, Auburn, Nebraska City, Hastings, Grand Island, and Wymore, and vicinities, and occasionally to and from various points within the state of Nebraska at large." The alleged ambiguity arises from the use of the words "to and from various points within the state of Nebraska at large."

It seems clear to us that the certificate designates the points of origin of irregular route operations by the words "From Beatrice and vicinity, on the one hand" and that it designates the terminals of irregular route operations by the words "on the other hand, to and from Omaha, Lincoln, Fremont, Fairbury, Falls City, Auburn,

Nebraska City, Hastings, Grand Island, and Wymore, and vicinities, and occasionally to and from various points within the state of Nebraska at large." So construed, the certificate grants irregular route authority to Neylon in Beatrice and vicinity and occasionally between Beatrice and vicinity and points in the State of Nebraska at large. In re Application of Meyer, 150 Neb. 455, 34 N. W. 2d 904; In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507. The foregoing cases seem to have determined the precise issue contrary to the contentions of the applicant. In the Canada case, the court aptly said that such a provision "obviously was not intended to authorize common carrier operations to and from all locations in the state. If it was, the specifications of definite points of origin and destination therein were meaningless." The decision of the commission is consistent with these holdings and is correct.

The applicant Neylon applies for alternative relief, if clarification is not granted as he requests, by asking that the commission extend his authority to permit statewide irregular route authority to operate between all points in the state.

It is first contended that this issue has been previously decided by the commission. This contention is based on the following circumstances. On November 27, 1953, a motion was filed by Petersen & Petersen, Inc., and others engaged in the operation of motor vehicles for hire in intrastate commerce in Nebraska, to clarify the authority of Neylon under the certificate issued to him in M-8664, supplement No. 6. It is asserted therein that such certificate " 'may possibly be subject to different interpretations, some of which could wrongfully deprive petitioners of a substantial volume of needed traffic and revenue to their grievous and irreparable injury and damage, and therefore it is imperative that an interpretation and determination of the aforesaid certificate be made by the Commission and the operations which may be performed thereunder be specifically set forth

by the Commission in its order of interpretation.'" Objections were filed to the motion by Neylon in which he asked that the motion for interpretation "'be denied and dismissed; and that the holder of the permit in question be permitted to go without further harassment.'" In overruling the motion for an interpretation, the commission stated: "It has not been the practice of this Commission to interpret one carrier's certificate upon the mere request of another carrier or group of carriers. Requiring a carrier to appear and justify operations performed under his certificate upon the mere request of persons, who, conceive imaginary injuries to themselves, could result in irreparable damage and constant harassment to the certificate holder."

It is evident that the question was not decided on its merits, but was decided on the basis that no actual injury was alleged which authorized the intervention of the commission. The commission was therefore correct in finding that the irregular route portion of Neylon's intrastate certificate is ambiguous and has not been previously interpreted by the commission.

Applicant contends that under these circumstances his present certificate should be extended to authorize the transportation of commodities generally, except those requiring special equipment, by irregular route operations between all points in the State of Nebraska. The burden is on Neylon in order to obtain such an extension of authority to show that the operation is and will be required by the present or future public convenience and necessity. The Greyhound Corp. v. American Buslines, Inc., 178 Neb. 9, 131 N. W. 2d 664; Denver Chicago Transp. Co., Inc. v. Poulson, 172 Neb. 862, 112 N. W. 2d 410.

Some 500 pages of the record are devoted to the determination of the issue of public convenience and necessity. Controlling questions are whether or not the operation will serve a useful purpose responsive to a public demand or need; whether or not this purpose can or will

be served well by existing carriers; and whether or not it can be served by Neylon in a type of operation without endangering or impairing the operations of existing carriers contrary to the public interest. Denver Chicago Transp. Co., Inc. v. Poulson, *supra.*

There is evidence in this record that little need, if any, exists for the requested extension of service. There is evidence that any public need or demand can be well served by existing carriers. There is also evidence that any substantial attempt to provide the additional service requested will impair or endanger the stability of existing carriers already serving the area under proper authorization. There is evidence to the contrary. Neylon produced witnesses who state that they have a need for the service. Neylon relies upon his past operations and service provided under his erroneously claimed right to serve between all points in the state at large. Ordinarily such operations are not sufficient to establish the necessary public interest. This rule is not without exception, but it has no bearing on the instant case. Preisendorf Transp., Inc. v. Herman Bros., Inc., 169 Neb. 693, 100 N. W. 2d 865.

The determination of the public interest in such a case is one that is peculiarly for the determination of the commission. If there is evidence to sustain the finding of the commission, this court cannot intervene. It is only where the findings of the commission is against all the evidence that this court may hold that the commission's finding on the evidence is arbitrary and capricious. Where the evidence is in conflict, as here, the weight of the evidence is for the determination of the commission and not this court.

Under the record in this case, we hold that the order of the commission is not arbitrary or capricious, and that it must therefore be affirmed.

AFFIRMED.