IN RE APPLICATION OF SAMARDICK OF GRAND ISLAND-HASTINGS, INC., OMAHA, NEBRASKA.
SAMARDICK OF GRAND ISLAND-HASTINGS, INC., APPELLEE, v. B.D.C. CORPORATION, APPELLANT.
159 N. W. 2d 310

Filed June 7, 1968. No. 36863.

W. W. Wallin and Robert E. Powell, for appellant.

Gross, Welch, Vinardi, Kauffman, Schatz & Day, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is an appeal from an order of the Nebraska State Railway Commission authorizing Samardick of Grand Island-Hastings, Inc., to engage in operations as a contract carried by motor vehicle to transport "Cash, letters, checks and other commercial papers, data processing materials, and other documents and records thereto re-

lated," over two regular routes. The objector and appellant is B.D.C. Corporation, a common carrier, who contends that the order of the commission granting the application is not supported by evidence and is therefore unreasonable and arbitrary. We shall refer to the applicant as Samardick and the objector as B.D.C.

On May 4, 1967, Samardick filed its application with the commission under the provisions of section 75-311, R. R. S. 1943, seeking a permit to operate as a contract carrier authorizing operation in Nebraska intrastate commerce over routes described in the application to transport cash, letters, checks and other commercial papers, data processing materials, and other documents and records thereto related, for the Omaha National Bank of Omaha. On June 6, 1967, a formal protest to the granting of the application was filed by B.D.C. A hearing was held on July 10, 1967. On October 23, 1967, the commission entered its order granting the application and B.D.C. has appealed to this court.

The order of the commission on October 23, 1967, granted the application. In showing the service authorized, the commission stated, "Cash letters, checks and other commercial papers, data processing materials, and other documents and records related thereto," instead of "Cash, letters, checks and other commercial papers, data processing materials, and other documents and records related thereto," as applied for. On March 19, 1968, after the appeal to this court was perfected, the commission, on its own motion, entered an order nunc pro tunc correcting the October 23, 1967, order by inserting the comma between the words "cash" and "letters" after finding that the absence of the comma in the original order was a typographical error and that the order as corrected stated the actual decision rendered on October 23, 1967. This it is authorized to do. "An appeal or error proceeding, properly perfected, deprives the trial court of any power to amend or modify the record as to matters of substance, but the pendency of an

appeal or writ of error ordinarily does not deprive the trial court of the power to correct its record so that it will truly set forth the proceedings as they actually occurred, even though the correction of the error deprives the appellant of his ground of appeal." 4 Am. Jur. 2d, Appeal and Error, § 354, p. 832. See, also, Andresen v. Lederer & Strauss, 53 Neb. 128, 73 N. W. 664. The same rule applies to an administrative agency such as the Nebraska State Railway Commission. Andrews v. Nebraska State Railway Commission, 175 Neb. 222, 121 N. W. 2d 32.

Samardick is a new corporation, having filed its articles of incorporation on March 23, 1967, and at the time of the hearing in this case held no permit or certificate from the commission. It is an independent corporation although it has common stockholders with Samardick and Company which operates in Omaha, Lincoln, Grand Island, Sioux City, and Sioux Falls in serving the public with armored car service for transporting cash, coins, and currency, but holds no authority to transport the additional commodities listed in the present application nor to perform contract service for the Omaha National Bank.

Samardick supported its application with the evidence of Darrell J. Dunham, its vice president charged with the supervision of the activities of the company including the securing of new business. He had had 5 years' experience with Samardick and Company before associating with the present applicant. His testimony is to the effect that Samardick and the Omaha National Bank have agreed upon a proposed contract by which Samardick will transport cash, cash letters, data processing materials, and documents to and from the Omaha National Bank and its data processing center at Grand Island and the correspondent banks of the Omaha National Bank now serviced by the Grand Island processing center. The service would require the establishment of two routes designated in the record as the "north run"

and the "south run." The north run would service nine correspondent banks between Grand Island and Bancroft via Columbus, Albion, Neligh, Wayne, and Pender. The south run would service four banks between Grand Island and York via Hastings, Lawrence, and Geneva. In the transporting of data processing materials the scheduling of the service is important in that the pickup of the materials must occur after the banks have closed and must be returned from the processing center at Grand Island before the banks open the following day. The data processing materials from some of the correspondent banks must go to the Grand Island processing center because of the type of materials used which could be processed in Grand Island but not in Omaha. It is the testimony of Dunham also that Samardick plans a complete service by transporting cash, coin, and currency in addition to data processing materials, cash letters, and related documents. Assurances were made that needed and required equipment and facilities would be provided and the scheduling of the service would be that fitting the particular needs of the correspondent banks using the Omaha National Bank's data processing center in Grand Island. The service would be on a regular route basis best fitting the needs of users under the contract of carriage. He gave assurance that, if the permit is granted, necessary capital and equipment would be available to fulfill its purposes in accordance with the needs of its users.

Five representatives of the affected correspondent banks testified in support of the application. One or more of them testified as follows: It would be a convenience to be able to obtain coin or currency from Grand Island along with transporting of data processing materials. A lesser cost of the service would be a pertinent factor. The time factor in scheduling would be important in alleviating tight schedules that cannot be avoided in common carrier service. One representative testified that the common carrier rate charged his bank

was substantially reduced when the present application was filed by changing a 17 cents per mile rate to the minimum tariff rate; and that the cost of transporting cash letters at the minimum rate of 40 cents per day by common carrier was abandoned by his bank in favor of the use of the mail at 10 or 15 cents a day. The witnesses admitted that the carrying of cash was important largely in emergency situations of little frequency. One witness testified that his bank was transporting its data processing material to the Omaha National Bank in Omaha for want of adequate transportation service to Grand Island and that it would be more convenient to ship to Grand Island which is much closer. One witness on the south run stated that its data processing material formerly was transported to Grand Island by contract with a local resident. The expense was prohibitive and its shipment goes to Omaha, an additional distance of 75 miles, because of a lack of adequate service to Grand Island. The assistant data processing officer of the Omaha National Bank testified that discussions with Dunham indicated scheduling could be made to accommodate all of the correspondent banks here involved at the Grand Island processing center; and further, that arrangements would be made at Grand Island for transporting cash with the data processing materials. He further stated that the rate to be charged by Samardick was still to be negotiated but that it would be considerably less than the common carrier rate now being paid to B.D.C.

The objector offered the testimony of Thomas M. McQuaid as the sole witness for B.D.C. McQuaid is the regional manager of B.D.C. in general charge of its operations. It holds a certificate authorizing it to transport cash letters, data processing materials, commercial papers and documents, dental supplies, optical supplies, and exposed and processed film and prints between all points in Nebraska over irregular routes. It has no authority to transport coins, currency, or negotiable secur-

ities. It has established routes which it alleges would be affected by the grant of the Samardick application. These are designated in the record as routes 559, 560, 561, and 565. His testimony is that the grant of the application would require the starting of route 559 at Norfolk instead of Bancroft and that route 565 would have to be abandoned, thereby leaving some banks not included in Samardick's application without service. He stated further that routes 560 and 561, composing the southern run, would not be changed, but a loss of revenue would result. McQuaid testified to the service rendered, the number of vehicles owned and operated, and the depository boxes furnished its customers. He said the Omaha National Bank is one of its largest customers and the transfer of its business to Samardick would create a large loss of revenue and the total abandonment of route 565 operating from Neligh to Grand Island via Albion, Genoa, Columbus, St. Paul, and intermediate points. He has had complaints as to rates and some minor complaints on scheduling. At one time, B.D.C. had a regular route between Grand Island and Seward via Hastings, Lawrence, and Geneva, which was abandoned because of high rates on a mileage basis. There is no conflict in this area with the proposed route by Samardick. He testified to the loss of revenue by the grant of the application, the real loss being the abandonment of route 565. He estimated the revenue loss by the abandonment of route 565 as approximately $1,600 per month. However, nothing in the record shows substantial loss of income or that the loss of income is detrimental to the continued operations of the objector. He testified that its certificate authorizes it to go anywhere anytime over irregular routes in the performance of service at common carrier rates. McQuaid stated that B.D.C. has established new routes and schedules as its business increased and has made specific changes at the request of the Omaha National Bank. He stated further that B.D.C. is willing to provide any type of equipment to transport commodi-

ties it is authorized to haul and that it has never been requested to transport cash, coins, or currency.

"A contract carrier by motor carrier has been generally defined by this court as one who furnishes transportation service to meet the special needs of specified shippers which cannot be adequately provided by common carriers. It is the duty of the commission to weigh the special needs of shippers desiring contract carrier service against the adequacy of the existing common carrier service. The effect on a protesting carrier of a grant of the application and the effect on shippers of a denial are factors to be weighed in determining if the grant of the application would be consistent with the public interest." Midwest Mail Service, Inc. v. Bankers Dispatch Corp., 174 Neb. 809, 119 N. W. 2d 692.

"The issuance of a permit by the commission to an applicant seeking authority as a contract carrier is controlled by section 75-235, R. R. S. 1943. In substance, this section provides that a permit will be granted if the applicant is found to be fit, willing, and able to perform the service in accordance with statutory requirements and the rules and regulations of the commission, and that the operation authorized will be consistent with the public interest. In determining the question of public interest, the commission is required to consider the number of competing operators, and not the number of motor vehicle units being operated by competing operators." Hagen Truck Lines, Inc. v. Ross, 174 Neb. 646, 119 N. W. 2d 76.

The burden is on the applicant to affirmatively establish the conditions precedent to the grant of a permit as a contract carrier. It must show that it is fit, willing, and able to perform the service in compliance with the rules and regulations of the commission and that the proposed operation is consistent with the public interest and the legislative policy expressed in sections 75-301 and 75-311, R. R. S. 1943. The term "consistent with the public interest" is quite different in its meaning than

the term "public convenience and necessity." The former means only that the proposed contract carrier service does not conflict with the legislative policy of the state in dealing with transportation by motor carriers, while the latter requires a consideration of the present service being rendered in the territory, the need of additional service, and the facilities which the applicant can provide. Consistent with the public interest simply means that it is not contrary to the public policy of the state as expressed in the Motor Carrier Act. Hagen Truck Lines, Inc. v. Ross, *supra*.

It is the general rule that an applicant for a contract carrier permit must show that the proposed service is specialized and fits the need of the contract shippers. If the service can be performed as well by common carriers a need for a contract carrier is not established. The evidence does not show that benefits will accrue to the contract shippers in the instant case. The evidence also shows that B.D.C. will suffer a revenue loss if the application is granted. Among the benefits accruing to the users of the service of the contract carriers is a reduction in the cost of carriage. The rate factors are not controlling. Rates are, however, one of the important factors proper to be considered. The evidence as to where the public interest lies in the present case is in conflict. The determination of the public interest in such a case is one that is peculiarly for the determination of the commission. If there is evidence to sustain the findings of the commission, this court cannot intervene. It is only where the findings of the commission are against all the evidence that this court may hold that the commission's findings on the evidence are unreasonable and arbitrary. Where the evidence is in conflict, as here, the weight of the evidence is for the determination of the commission and not for this court. Neylon v. Petersen & Petersen, Inc., 181 Neb. 143, 147 N. W. 2d 488.

Under the foregoing rules, the evidence is sufficient to support the following findings: The applicant is fit,

willing, and able to perform the proposed service. There is a need for the specialized service on the part of the supporting shippers. The interested shippers are willing to contract with the applicant for the specialized service if the application is granted. The existing common carrier, B.D.C., will suffer some revenue loss by a grant of the application but not such as is inconsistent with the public interest. The grant of the application is consistent with the public interest and legislative policy.

We hold that the commission was acting within its powers in determining the issue on the conflicting evidence it had before it. The grant of the application is not, therefore, arbitrary or unreasonable, and the commission's findings and order are affirmed.

AFFIRMED.